**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Victor ROEDER,
Defendant-Appellant.**

**No. 74–1853.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 17, 1975.

Decided Nov. 7, 1975.

Rehearing Denied Nov. 26, 1975.

---

Monti L. Belot, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for plaintiff-appellee.

Michael Lerner, of Barnett & Lerner, Kansas City, Kan. (Barbara M. Vache, of Barnett & Lerner, Kansas City, Kan., on the brief), for defendant-appellant.

Before HILL, SETH and DOYLE, Circuit Judges.

DOYLE, Circuit Judge.

The issue which we are asked to consider in this case—an appeal from a criminal conviction—is whether the transportation by defendant of a female across state lines for the purpose of participating in various sexual acts with him for hire and for the purpose of producing a movie depicting these acts constitutes a violation of the Mann Act.

The indictment charges that "on or about the 6th day of December, 1970, the defendant did unlawfully, willfully and knowingly transport in interstate commerce from Kansas City, Missouri, to Overland Park, Kansas, a woman * * * for the purpose of prostitution, debachery (debauchery) or other immoral purposes, in violation of 18 U.S.C. § 2421." [1]

The facts in the case, with one exception, are undisputed. It is stipulated (in substance) as follows:

On December 1, 1970, appellant telephoned Bobbie Lynn Eicholz, the girl in the drama, to advise her of arrangements to make a pornographic movie the following Sunday.

---

1. This section provides:

Whoever knowingly transports in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; * * *

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

On December 6, 1970, appellant drove Bobbie Lynn Eicholz from Missouri to Overland Park, Kansas, to the Hoge Funeral Home, and photographed the entrance.

During the trip from Missouri to Kansas, according to the testimony, appellant told Bobbie Lynn Eicholz that when they arrived in Kansas they would make a movie in which they, appellant and Eicholz, would engage in various sexual acts and that she would be paid.

After the arrival in Kansas they did engage in the mentioned acts, all of which were filmed. After the conclusion of the filming appellant returned Eicholz to her home in Missouri and paid her a sum of money which was to compensate her for her activities. She received none of the proceeds from the subsequent sale of the film.

Later there were arrangements made with Eicholz for her to travel to Hawaii for the purpose of making additional movies, and subsequently appellant and Eicholz did travel separately to Hawaii in early January 1971, where they made another movie of the same nature. She was paid for this as well.

Eicholz was convicted of conspiracy to violate the Mann Act in a separate proceeding.

There was testimony which corroborated that of Eicholz as to what occurred during the making of the movie. Other persons were invited to attend and several of these spectators paid a sum of money to watch the production of the film.

In appellant's testimony he admitted making the movie and performing the acts therein, but denied that he transported Eicholz from Missouri to Kansas, maintaining that he picked her up at her mother's home in Kansas. This latter fact was, however, refuted by Eicholz' mother.

The basic argument of appellant is that since the purpose of the transportation was to make a movie and not to promote the white slave business or was not directed at immorality, the Mann Act was not violated. The ultimate question is whether the fact that a movie was made and that payment was at least in part for this activity detracts from the fact that sexual acts were performed and that money was paid incident to the acts.

In its instructions to the jury the court charged that the term "other immoral purposes" contained in the indictment had no broader meaning than the term "prostitution."

## I.

■ We are of the opinion that the making of the movie does not serve to purge the transaction of its Mann Act character. It is true that the majority of Mann Act prosecutions involve what might be characterized as commercial vice. They are concerned with the most commonly thought of form of prostitution, which is engaging in sexual acts for pay with more than one man. *United States v. Wheeler,* 44 F.2d 385 (10th Cir. 1971); *United States v. Kennedy,* 442 F.2d 444 (10th Cir. 1971). It is also true that there is no case exactly like the present one, but from this it does not follow that it escapes the thrust of the statute, for there have been variations from the accepted types of violations.

■ Defendant claims that the Mann Act's definition of prostitution which governs does not contemplate a single series of acts of intercourse; that it contemplates instead widespread traffic and prostitution including the exploitation of the woman; that a single transaction does not suffice. The Supreme Court has rejected this argument in *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917) and *Cleveland v. United States,* 329 U.S. 14 at 17 fn.3, 67 S.Ct. 13, 91 L.Ed. 12 (1946).

Thus convictions have been upheld where defendant had relations with an individual woman without pay. *Caminetti v. United States, supra; United States v. Reginelli,* 133 F.2d 595 (3d Cir.), *cert. denied,* 318 U.S. 783, 63 S.Ct.

856, 87 L.Ed. 1150, *rehearing denied,* 319 U.S. 780, 63 S.Ct. 1027, 87 L.Ed. 1725 (1943); *De Vault v. United States,* 338 F.2d 179 (10th Cir. 1964).[2]

The often cited case of the Supreme Court which provides a definition of prostitution is *Cleveland v. United States, supra.* The opinion in that case contains the definition "the offering of the body to indiscriminate lewdness for hire . . . ." or as "sexual relations for hire." *Id.* 329 U.S. at 17, 67 S.Ct. at 15.

The Fourth Circuit in *United States v. Sapperstein,* 312 F.2d 694 (4th Cir. 1963), considered a case in which the women were transported for the purpose of performing in a nightclub. The Mann Act was held to be violated because their duties included engaging in acts of prostitution with the patrons. Along this same line the Seventh Circuit has held that where the transportation was for the performance of a strip tease act at a so-called stag party and where the sexual acts grew out of this and were not incident to the transaction, there was not a violation of the Mann Act. *See United States v. Prater,* 518 F.2d 817 (7th Cir. 1975). The indications from the court's opinion were that if the employment had been for sexual activity the result would have been just the opposite.

A further argument of defendant is based on *Mortensen v. United States,* 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944), in which the Supreme Court reversed the Mann Act convictions of defendants, operators of a house of prostitution in Nebraska, who took two of the girls living in the house as prostitutes on a vacation trip to Utah and then returned them to the house in Nebraska. But the trip itself was entirely innocent in its purpose; the girls were not hired out for acts of prostitution en route. Prostitution was not an integral part, a cause, for the trip.

In our case the performance of the acts was absolutely essential to the production of the movie; the acts could not be divorced from the movie making. This makes it sufficient to bring appellant within the Act. *Cf. Mortensen v. United States, supra; De Vault v. United States, supra; United States v. Tyler,* 424 F.2d 510 (10th Cir. 1970).

## II.

We must reject the further contention of appellant that since it is a film the First Amendment not only clothes it but places it beyond the reach of the Mann Act. True, movies are forms of expression entitled to First Amendment protection, *Burstyn v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952), and acting in a movie is protected as well, *Schacht v. United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), but the First Amendment does not constitute a license to violate the law. *Cf. Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

The important point is that Congress is within its powers in prohibiting the interstate transportation of a woman for the purpose of prostitution. Of itself it is not a suppression of speech or expression. *See United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

The judgment of the district court is affirmed.

---

**2.** In *United States v. McClung,* 187 F.Supp. 254 (D.C.La.1960), the court held that a single act of intercourse between defendant and a willing woman (there is nothing in our case to indicate that Ms. Eicholz was coerced) was not violative of the act. *McClung,* however, is distinguishable since there the woman was uncompensated and, here, Ms. Eicholz was paid for her performance. Moreover, the activities in *McClung* appeared to be wholly private; in our case the activities were commercial and public.