Joseph Jaspan, J.
On April 25, 1974, the Grand Jury handed up an indictment charging 16 defendants with conspiracy in the third degree (Penal Law, § 105.05) and obscenity in the first degree (Penal Law, § 235.06).
The indictment alleges that each participated in the production of an obscene film "All in the Sex Family” also known as "Sex Family Robinson Rides Again” with intent to wholesale promote obscene material.
Five of the 16 defendants entered pleas to lesser included offenses, one defendant was never arraigned and upon motion of the District Attorney the indictment was dismissed in the interests of justice as to five other defendants who were shown at a hearing to have only a peripheral relationship to the venture.
The five defendants who remain under indictment include three of the actors, Jason Russell, Tina Russell and Jamey Gurman, and a married couple, Mary and Alan Commer, who are charged with engaging in various activities which were directly related to the filming and the financing of the film.
A pending motion by some defendants no longer in the case to dismiss in the interests of justice and for reasons of trial delay has been extended to include all defendants and is now deemed to apply to the afore-mentioned defendants still under indictment. An issue has also been raised as to whether the defendant actors can be charged with obscenity in the first degree and whether obscenity in the second degree is a lesser included offense.
SPEEDY TRIAL MOTION
From April 20, 1974 to February 3, 1976, there were a series of at least 15 adjournments at the request of one or more of the defendants which were granted without objection by the District Attorney. Some of the adjournments were occasioned by normal pretrial activities.
After February 3, 1976, there were several unexplained adjournments until May 3, 1976, when the case was first put on the Trial Calendar by the court. The case was then carried as ready and passed until December 6, 1976, when it was again passed to January 3, 1977, the return date of this motion. In the meanwhile, the case was transferred from the County Court to the Supreme Court by order dated December 14, 1976. This motion dated December 22, 1976, and returna *598 ble in the first instance on January 3, 1977 immediately followed.
In this court the People have indicated their readiness to go to trial and urge that they have been ready for a long period of time and so advised the court on various occasions.
The delay was extensive, but cannot be charged to the District Attorney. While he did not oppose the many adjournments up to January 3, 1977, it does not appear that he requested more than one of them. The presence of more than a half dozen independently practicing lawyers resulted in individual requests for delay which necessarily affected all parties. The defendants’ claim that adjournments attributable to one defendant in a conspiracy case cannot be charged against a codefendant and is not excludable time in the computation of the time between indictment and trial.
The delay after May 3, 1976, is attributable to the calendar congestion and to the relatively low priority given to the trial of this matter. The County Court during this period of time was burdened with a heavy backlog of cases included among which were those involving incarcerated defendants and those charged with far more serious felonies. It was physically impossible to try the ready cases with the available judicial manpower, a situation which in 1976 resulted in the assignment of criminal cases to this court on a regular basis.
CPL 30.30 (subds 1, par [a]) provides that an indictment must be dismissed where the People are not ready for trial within six months of the commencement of a criminal action.
Section 30.30 goes on to engraft numerous exceptions to this general rule. In calculating the time within which the People must be ready for trial, various periods are excluded from consideration, such as the time for the making of and decisions on pretrial motions; periods of delay resulting from continuances granted by the court at the request of, or with the consent of defense counsel (§ 30.30, subd 4, par [b]); and reasonable periods of delay when defendant is joined for trial with a codefendant as to whom the time for trial has not run and good cause is not shown for granting a severance (§ 30.30, subd 4, par [d]). This later exception is discussed in the Practice Commentary to McKinney’s Consolidated Laws of New York (Richard G. Denzer, Book 11 A, CPL 30.30, Pocket Part 1976-1977, p 39): "Also not counted is a period of delay caused by a co-defendant with whom the defendant has been *599 joined for trial, unless good cause for the granting of a severance can be shown.”
Implicit in this section is an expression of legislative intent not to allow one defendant’s successive requests for adjournments to inure to the benefit of his codefendants, on a motion to dismiss.
The history of the instant case has shown a series of successive adjournments requested by the several defense lawyers involved. The case is typical of many the court has seen where the difficulty of procuring the attendance of several busy practitioners to try a case involving multiple defendants results in long adjournments. It cannot have been the intent of the Legislature in drafting section 30.30 that the remedy for such a situation is a dismissal of the indictment. I therefore conclude that adjournments attributable to one or more defendants are excludable time as to all other defendants who did not object thereto.
The question remaining is whether the long calendar delay attributable to court congestion and the priority with which cases have been tried nevertheless gives rise to the relief sought.
People v Imbesi (38 NY2d 629) dealt with a situation where the delay in bringing the matter to trial was due, in part, to the District Attorney’s practice of giving priority to cases involving defendants incarcerated for substantial periods. The court stated (p 632): "We cannot say that the priority system utilized by the District Attorney here * * * was unreasonable, at least where it has not been shown that defendant was harmed by the delay”.
The court distinguished People v Johnson (38 NY2d 271) where there was an 18-month delay in bringing a murder case to trial. There, preference was given to cases depending on the date of indictment and the incarceration of the defendant. The defendant there had consistently proclaimed his innocence, demanded to be brought to trial, resisted adjournments and apparently suffered the loss of a crucial witness on the issue of self-defense.
None of these factors are present here. It does not appear that any of the defendants were intent upon an early trial; there was no pretrial incarceration and almost every request for an adjournment came from the defendants. Nor does it appear that there has been any prejudice to any of the defendants.
*600 These factors, when considered in connection with the priority system of the District Attorney’s office and in the court weaken the claims of the defendants. Indeed it has been stated by the Court of Appeals that "some sort of priority should go to jail cases” (People v Kelly, 38 NY2d 633, 636) and at least inferentially to other cases involving more serious offenses.
Although the delay may be satisfactorily explained, the motion should nevertheless be granted if prejudice to the defendants resulted therefrom.
But the critical evidence is largely on film and is unlikely to diminish or increase in testimonial value with the passage of time. The standards by which a sex film can be judged have not become less favorable to the defendants with the passage of time. The community response is more tolerant and the objective tests cannot be modified nunc pro tune.
The defendants claim actual prejudice because experts selected by one of the defense attorneys, no longer in the case, are not now available and new experts would have to be employed. It is further alleged that the producer Liggio has died and some film material was in his exclusive possession. But Liggio was not indicted and it appears that he passed away prior thereto. No claim can be made that the loss of this potential witness resulted from the delay.
Nor is any claim made that the District Attorney caused or encouraged the delay in order to gain a tactical advantage and I find no evidence of such conduct.
I find no basis for a dismissal upon the ground that the defendants have been denied a speedy trial and this portion of the motion is denied.
MOTION TO DISMISS IN THE INTERESTS OF JUSTICE
In People v Clayton (41 AD2d 204) various factors to be evaluated in deciding a motion of this type were enumerated by the court: (a) the nature of the crime, (b) the available evidence of guilt, (c) the prior record of the defendant, (d) the punishment already suffered by defendant, (e) the purpose and effect of further punishment, (f) any prejudice resulting to defendant by the passage of time and (g) the impact on the public interest of a dismissal of the indictment.
The court in Clayton went on to say (p 208): "the statute erects a well-considered discretion of the court as a safeguard *601 to prevent a dismissal of the indictment unless the public interests are as fully protected as to the individual interests of the defendant for justice and mercy.”
The three individuals alleged to have acted in the film, unlike the others against whom the indictment was dismissed, cannot be said to have played only a peripheral role. Without their efforts, the film could not have been made. Their alleged exhibitionism, their willingness to portray publicly explicit sexual acts are central to the whole effort to produce and promote the film.
It is obvious, too, that they were aware that the film they were making was not for private use. The professionalism and number of technical people involved, the apparent expense and the length of the film should have indicated to them that this was a commercial venture. Their role must be distinguished from that of staff who merely provided equipment or one who invested in another film and involuntarily found himself to be an investor in an allegedly hard core pornographic film.
Briefly considering the foregoing Clayton elements, I find with respect to these actors that the nature of the crime charged is that they participated in a film which may be in violation of standards set forth in case law applicable at the time. The statutory and case law are concerned with the impact of such activities upon the community and for that reason, a dismissal may have an adverse impact on the public interest. It is true that these defendants have no prior record and may have suffered punishment by reason of this pending indictment, but a dismissal could be construed as a stamp of approval on a proscribed activity. This case does not meet the significant Clayton tests and dictates a denial of the motion to dismiss in the interests of justice.
The three actors also maintain that an actor in an allegedly obscene film cannot be convicted of obscenity in the first degree, and that therefore the indictment should be dismissed as against them since conspiracy in the third degree requires as an "object crime”, a felony. They claim, in addition, that an actor may only be charged with obscenity in the second degree and since obscenity in the second degree is not a lesser included offense of obscenity in the first degree, the entire indictment must be dismissed against them.
Obscenity in the first degree is defined as follows in section 235.06 of the Penal Law: "A person is guilty of obscenity in *602 the first degree when, knowing its content and character, he wholesale promotes or possesses with intent to wholesale promote, any obscene material.”
It is a class D felony.
To "wholesale promote” means to manufacture, issue, sell, provide, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, or to offer or agree to do the same for purposes of resale. (Penal Law, § 235.00, subd 5.)
Obscenity in the second degree is defined as follows:
"A person is guilty of obscenity in the second degree when, knowing its content and character, he:
"1. Promotes, or possesses with intent to promote, any obscene material; or
"2. Produces, presents or directs an obscene performance or participates in a portion thereof which is obscene or which contributes to its obscenity. (Emphasis added.)
Obscenity in the second degree is a class A misdemeanor.
"Promote” means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit or advertise, or to offer to do the same. (Penal Law, § 235.00, subd 4.)
The principal difference between the two degrees is that tht higher degree employs the term "wholesale promotes * * * for purposes of resale”, whereas obscenity in the second degree merely refers to promotion and specifically identifies one activity as that of participating in a portion thereof.
The CPL defines a lesser included offense as follows: "When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the later is, with respect to the former, a lesser included offense’.” (CPL 1.20, subd 37.)
It is clear that when one "wholesale promotes”, he also "promotes”, although not for the purposes of resale. It is therefore evident that to that extent obscenity in the second degree is a lesser included offense of obscenity in the first degree.
People v Moyer (27 NY2d 252), cited by the defendant, does not lead to a contrary conclusión. In that case it was held that harassment was not a lesser included offense of assault, since harassment required the proof of an element which was not required to establish the crime of assault — specifically, the intent to harass, annoy or alarm.
*603 In the instant case, obscenity in the second degree does not require the proof of any element which is not required for a conviction of obscenity in the first degree. All the elements of proof are the same; obscenity in the first degree requiring the additional element that the promotion be for "purposes of resale”.
It follows that if the defendant actors may be found guilty of the lesser included offense of obscenity in the second degree that they may also be found guilty of conspiracy in the fourth degree, which is conspiracy to commit any crime, including a misdemeanor, and that the indictment would thus be sufficient under CPL 210.20 (subd 1, par [b]) since the evidence before the Grand Jury would at least be sufficient to establish a lesser included offense.
The defendants, Mary Commer and Alan Commer also allege that they had only a peripheral part in this production and that the interests of justice dictate a dismissal as to them.
Mary Commer testified that she knew one of the defendants as the director of the film, that she arranged for the renting of the house at which the film was made and was in charge of the premises during much of the two days’ filming. She was there from 9:00 a.m. to 6:00 p.m. on Saturday and locked up the house at the close of the activities that day. She was at the house again on Sunday opening the premises with a key and leaving only when the owner from whom it had been rented returned on that day. While she alleges that she was at the house to "mind the phone”, she did not stay in the room where the phone was located. It appears that her husband, who did not testify, similarly participated.
These defendants also loaned some $3,375 to the producer to finance the film and ultimately recovered back some $2,100 of these "loans”.
The timing of the "loan” and the return suggests the strong possibility that the defendants were investing in the allegedly pornographic film and recovered some of their investment as a result of its promotion in public theatres. I am not impressed by the testimony that the defendants thought they were investing in an art film.
These defendants are a school teacher and post office clerk and the sums involved were meaningful to them. It is unlikely that they did not investigate the matter carefully and therefore knew what was to be produced. The conclusion may be *604 established that they aided in its production with intent to wholesale promote.
I need not resolve the fact issue on this motion at this time. It is sufficient to point out that the defendants were deeply involved in this venture and not innocent bystanders caught up in an activity they did not anticipate or want.
Their motion to suppress in the interests of justice is denied.