OPINION OF THE COURT
Robert M. Haft, J.
The defendant, Harold Kovner, is charged with two counts of promoting prostitution in the second degree and nine counts of obscenity in the first degree. These charges arise out of the production, wholesale promotion and sale of several films which depict explicit sexual conduct (i.e., intercourse and sodomy).
The People’s theory of the "promoting prostitution” charges is quite novel — that a person may be guilty of promoting prostitution if he "advances or profits” (Penal Law, § 230.15) from the conduct of "actors and actresses” who engage in explicit sexual conduct as paid performers. This is the first time in this jurisdiction that the prostitution statute has been utilized in an effort to curb pornography.
The first two counts of the indictment charge defendant with promoting prostitution in the second degree (Penal Law, § 230.25). Count one charges that: "The defendant, in the County of New York, during the period from January 1, 1977 to April 26, 1977 knowingly and intentionally advanced and profited from the prostitution of a person less than nineteen years old.”
Count two charges that: "The defendant, in the County of New York, during the period from January 1, 1977 through April 26, 1977, knowingly and intentionally advanced and profited from prostitution by managing, supervising, controlling, and owning, alone and in association with others, a house of prostitution business, and an enterprise involving prostitution activity by two and more prostitutes.” Defendant has moved, inter alia, for an order dismissing these counts upon the ground that the evidence before the Grand Jury was legally insufficient to establish the offense charged or any lesser included offense.
Testimony was elicited before the Grand Jury that defendant maintained a studio at 76 Franklin Street, New York County, for the purpose of making films. On more than one occasion, he was observed paying actors and actresses money to engage in sexual intercourse, deviate sexual intercourse and other sexual conduct with éach other, while the defend *416 ant, in concert with others, recorded the activity on film and later promoted such films on a wholesale level.
The evidence presented to the Grand Jury sufficiently established that certain actors and actresses engaged in explicit sexual conduct and that defendant, by hiring them, providing the money, the premises, and "directing” the performances, procured, caused and induced them to do so. But in order to promote, advance, or profit from prostitution, there must be some underlying proscribed conduct falling within the definition of "prostitution”. The threshold question before this court is whether the hiring of actors and actresses for the purpose of engaging in filmed sexual conduct constitutes prostitution.
Section 230.00 of the Penal Law defines prostitution as follows: "A person is guilty of prostitution when such a person engages or agrees or offers to engage in sexual conduct* with another person in return for a fee.”
Essentially, the defendant contends that the production of motion pictures is constitutionally protected (Joseph Burstyn, Inc. v Wilson, 343 US 495; Interstate Circuit v Dallas, 390 US 676), and that the receipt of money by actors and actresses for the express purpose of participating in such films and engaging in filmed sexual conduct, cannot constitute prostitution within the meaning of section 230.00.
This court disagrees. The Legislature, by enacting section 230.00, intended to prohibit certain sexual conduct of a commercial nature, thereby making illegal that which might otherwise be legally permissible save that a fee was offered or paid in return for the sexual conduct. (See 6 Zett, New York Criminal Practice, 58.1 [2]; see, also, Gilbert, Criminal Law and Procedure, Commission Staff Comments on the Revised Penal Law, 2A-97 [1977-1978]; The Proposed Penal Law of New York, 64 Col L Rev 1555.) As recently as 1976, the Legislature recognized the need for an even more stringent effort to control prostitution by enacting section 240.37 of the Penal Law, which proscribes loitering for the purpose of engaging in a prostitution offense. In upholding the constitutionality of that statute, the Court of Appeals, in People v *417 Smith (44 NY2d 613, 617-618) noted that: "Because prostitution normally involves two willing participants and complaints by those implicated are rare indeed, section 230.00 is insufficient to meet public needs in light of the profligate spread of the world’s oldest profession and its attendant evils in our central cities. Accordingly, the Legislature added section 240.37 to the Penal Law”. Neither the statute itself (Penal Law, § 230.00), nor any decisions interpreting it, exclude explicit sexual conduct by a paid performer from the definition of prostitution. That the fee paid for the sexual activity was provided by a nonparticipant or that the defendant’s object was to photograph the activity creates no legal distinction. Neither does it bear upon the State’s legitimate interest in regulating the commercialization of sex within its borders. (See Stanley v Georgia, 394 US 557.) Nor does the availability of other prosecutorial alternatives (see, e.g., People v Dangerfield, NYLJ, April 12, 1977, p 6, col 3 [consensual sodomy]; People v Bravman, 89 Misc 2d 596 [promoting prostitution]; People v Chang, 86 Misc 2d 272 [consensual sodomy and promoting obscenity]; People v Block, 71 Misc 2d 714 [promoting prostitution]) preclude the use of the prostitution laws to curb the production of pornography.
Although the prosecuting authorities in this State seem not to have heretofore elected to apply the prostitution laws for the purpose of regulating pornography, at least one other jurisdiction has recognized and utilized this procedural approach. (See People v Fixler, 56 Cal App 3d 321; see, also, People ex rel. Van Decamp v American Art Enterprises, 75 Cal App 3d 523.)
In People v Fixler (supra), the defendant, a "photo editor”, was convicted of the crime of "pandering”, which encompasses, among other things, the procuring of another person for the purpose of prostitution or the causing, inducing, persuading or encouraging of another to become a prostitute. (California Penal Code, §266i.) The defendant, in this case, directed the work of photographers and paid various fees to "models” to engage in explicit sexual activity while being photographed. The court stated that (p 325): "if A pays B to engage in sexual intercourse with C, then B is engaging in prostitution and that situation is not changed by the fact that A may stand by to observe the act or photograph it. A criminal act is not made any the less criminal by pictorial recordation of the act.”
This court is not unmindful of the fact that a literal *418 interpretation of the prostitution laws, and their vigorous enforcement may create potentially a chilling effect on the exercise of First Amendment freedoms. It is not inconceivable that a person involved in the filming of a sexually explicit film, may unexpectedly find him or herself criminally prosecuted for sexual conduct which occurred during that filming, whether or not the film itself is actually obscene or even whether or not the explicit sexual conduct appears in the final edited version of the film. However, when a State undertakes to regulate a social evil such as prostitution, or pornography, it has a greater power to regulate the nonverbal physical conduct which may occur than to suppress depictions or descriptions of the same. (United States v O’Brien, 391 US 367, reh den 393 US 900.) While First Amendment considerations may protect the dissemination of printed or photographic material regardless of the manner in which it was obtained, this protection will not shield one against a prosecution for a crime committed during the origination of the act. As noted in People v Fixler (supra, p 326): "The fact that a motion picture of an actual murder, rape or robbery in progress may be exhibited as a news film or a full length movie without violating the law does not mean that one could with impunity hire another to commit such a crime simply because the primary motivation was to capture the crime on film.”
In the abstract, any criminal statute which penalizes conduct may be said to impinge upon speech or expression in some fashion. However, the protections afforded by the First Amendment are not absolute. When the application of governmental restrictions designed to regulate a social evil creates an indirect tension with the provisions of the First Amendment, the Government has the burden of establishing that its interests are legitimate and compelling and that the incidental infringement upon First Amendment rights, if any, is no greater than essential to vindicate its subordinating interests. (See Matter of Stolar, 401 US 23; United States v O’Brien, supra; Shelton v Tucker, 364 US 479.) In light of the recent Court of Appeals decision in People v Smith (44 NY2d 613, supra) and since the penal laws of this State are to "be construed according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law, § 5.00), this court is compelled to recognize a legitimate State interest in prohibiting prostitution and therefore will permit this prosecution to go forward. It remains for the trial court to *419 determine whether the People have fully discharged their burden of establishing that acts of prostitution did indeed take place. Defendant’s motion to dismiss counts one and two of the indictment is denied.
The other objections of the defendant in respect of counts one and two (e.g., that prostitution laws invade privacy, are applied in a discriminatory fashion, unjustifiably attempt to proscribe gratification of a fundamental biological need, and are unsupported by any rational nexus to a legitimate end) are without legal merit and are also denied.
[Additional material omitted for purposes of publication.]

 In People v Costello (90 Misc 2d 431), a restricted definition of "sexual conduct” was adopted, requiring that the prohibited activity to be considered as an act of prostitution must be either sexual intercourse, deviate sexual intercourse or masturbation. Although "sexual conduct” is more broadly defined throughout the Penal Law (§130.00, subd 3; § 235.20, subd 3; §245.10, subd 2; § 263.00, subd 3), the more restricted Costello definition of "sexual conduct” is approved and followed here.