[No. S000070. Aug. 25, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
HAROLD FREEMAN, Defendant and Appellant.

420

**COUNSEL**

Stuart Goldfarb and Dennis A. Fischer for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Mark Alan Hart, Robert R. Anderson and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUFMAN, J.**—Defendant Harold Freeman hired and paid actors to perform in a nonobscene commercial film which portrayed sexually explicit acts. On that account he was charged with and convicted of five counts of pandering—procurement of persons "for the purpose of prostitution"—under Penal Code section 266i. He appealed contending his conduct did not constitute the crime of pandering. The Court of Appeal affirmed the judgment of conviction.

This court granted review because of First Amendment concerns and the statewide significance of the issues. Because of the language of the statutes involved and because construction of the pandering statute to make it applicable to the hiring and payment of actors to perform in a nonobscene motion picture would unlawfully impinge upon protected First Amendment rights, we are compelled to conclude the pandering statute was not intended to and does not apply to the conduct here involved and that defendant's convictions of pandering must be reversed.

### I. FACTS

Defendant Freeman is the president of Hollywood Video Production Company (Hollywood Video), which is in the business of producing and marketing "adult" films. In September 1983 defendant produced and directed a film called "Caught from Behind, Part II." Defendant hired actors and actresses to perform in the film. As part of their roles, the performers engaged in various sexually explicit acts, including sexual intercourse, oral copulation and sodomy.

All the filming was done in the private residence of Nancy Conger, and was not open to the public. Conger was paid for the use of her home in the making of the film. She also asked if she could act in the film. Defendant agreed Conger could be in the film. With the exception of Nancy Conger, all the actors and actresses in the film were cast through the World Modeling Agency operated by Jim South. Defendant paid each actor for his or her performance in the film, and paid an additional fee to South for each performer from World Modeling Agency who had been cast for a role in the film.

Defendant was charged with five counts of pandering (Pen. Code, § 266i) based on the hiring of five actresses who performed sex acts in the film.[1]

---

[1] Although both male and female actors were hired and paid and although both participated in the sexually explicit conduct, the criminal charges were based solely on the conduct of the female actors.

Defendant was not charged with any violation of the obscenity laws (Pen. Code, § 311 et seq.) in connection with production or distribution of the film and there was no determination the film was obscene.[2]

After a jury trial, defendant was found guilty on all five counts. Defendant was placed on five years probation[3] and ordered as conditions of probation to serve 90 days in the county jail and pay restitution of $10,000 under Penal Code section 1203.04 and a $100 restitution fine under Government Code section 13967, subdivision (a).

## II.  DISCUSSION

The issues and contentions in this case and their resolution are pervaded by a central fact. The film was not determined to be obscene and for purposes of this review must be deemed to be not obscene. Thus the prosecution of defendant under the pandering statute must be viewed as a somewhat transparent attempt at an "end run" around the First Amendment and the state obscenity laws. Landmark decisions of this court and the United States Supreme Court compel us to reject such an effort.

### A.  *The Statutory Language*

The pandering statute under which defendant was convicted provides in pertinent part: "Any person who: (a) procures another person for the purpose of prostitution . . . is guilty of pandering, a felony . . . ."[4] (§ 266i.)

---

[2] All further statutory references are to the Penal Code unless otherwise stated.

[3] Section 1203.065 prohibits the granting of probation for a conviction of pandering. The trial court found, however, that imposition of a prison term would constitute cruel and unusual punishment for defendant's conduct and placed defendant on probation notwithstanding section 1203.065. The People appealed the granting of probation, which was affirmed by the Court of Appeal. Review of that decision is pending in this court in a separate proceeding (S000319, review granted Apr. 16, 1987). In view of our conclusion the judgment of conviction must be reversed because the conduct did not constitute pandering, the review of the probationary sentence will become moot.

[4] Section 266i reads in full as follows: "Any person who: (a) procures another person for the purpose of prostitution; or (b) by promises, threats, violence, or by any device or scheme, causes, induces, persuades or encourages another person to become a prostitute; or (c) procures for another person a place as inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state; or (d) by promises, threats, violence or by any device or scheme, causes, induces, persuades or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate; or (e) by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution; or (f) receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose of prostitution, or to come into this

"Prostitution" is not defined in section 266i. Rather, the definition of "prostitution" derives from section 647, subdivision (b): " '[P]rostitution' includes any *lewd act* between persons *for money or other consideration.*" (Italics added.)

█  The People argue that the actors and actresses in the film engaged in acts of prostitution—i.e., sexual acts for money—because they performed the acts before the movie cameras "for the money they received." Thus, the People argue, defendant was guilty of procuring the actors "for the purpose of prostitution." The People's syllogism is flawed in significant regards.

First, the definition of "prostitution" (and ultimately, therefore, the definition of "pandering") depends on the definition of a "lewd act." In *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636] this court construed the term "lewd conduct" for purposes of prosecution under section 647, subdivision (a), proscribing lewd or dissolute conduct in a public place, a provision related to the prohibition against prostitution contained in section 647, subdivision (b). In *Pryor* we held that a "lewd act" requires "touching of the genitals, buttocks, or female breast *for the purpose of sexual arousal, gratification,* annoyance or offense . . . ." (Italics added. *Id.,* at p. 256.) The definition of a "lewd act" for purposes of section 647, subdivision (b) evolved from *Pryor* and was applied to "prostitution" in *People* v. *Hill* (1980) 103 Cal.App.3d 525, at pages 534-535 [163 Cal.Rptr. 99] as follows: "[F]or a 'lewd' or 'dissolute' act to constitute 'prostitution,' the genitals, buttocks, or female breast, of either the prostitute or the customer must come in contact with some part of the body of the other for the purpose of *sexual arousal or gratification of the customer or of the prostitute.*" (Italics added.)

One contention of defendant is that requisite to the crime of prostitution is the existence of a "customer" and there being no "customer" here, no prostitution was involved and therefore no procurement for purposes of prostitution and no pandering. We find it unnecessary to address that contention. █  Whether or not prostitution must always involve a "customer," it is clear that in order to constitute prostitution, the money or other consideration must be paid *for the purpose of sexual arousal or gratification.*

█  The payment of acting fees was the only payment involved in the instant case. This payment was made to the actors for performing in a nonobscene film. There is no evidence that defendant paid the acting fees

---

state or leave this state for the purpose of prostitution, is guilty of pandering, a felony, and is punishable by imprisonment in the state prison for three, four, or six years, or, where the other person is under 16 years of age, is punishable by imprisonment in the state prison for three, six, or eight years."

for the purpose of sexual arousal or gratification, his own or the actors.' Defendant, of course, did not himself participate in any of the sexual conduct. Defendant, the payor, thus did not engage in either the requisite conduct nor did he have the requisite mens rea or purpose to establish procurement for purposes of prostitution.[5]

## B. *First Amendment Considerations*

■ However, even if defendant's conduct could somehow be found to come within the definition of "prostitution" literally, the application of the pandering statute to the hiring of actors to perform in the production of a nonobscene motion picture would impinge unconstitutionally upon First Amendment values.

■ It is the duty of this court in construing a statute to ascertain and give effect to the intent of the Legislature. (*Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 366 [90 Cal.Rptr. 592, 475 P.2d 864]; *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 53 [152 Cal.Rptr. 153].) ■ And it is fundamental that the Legislature will not be presumed to intend unconstitutional results. (*People* v. *Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149]; *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) "[W]here ' "the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution." ' [Citations.]" (*People* v. *Davenport* (1985) 41 Cal.3d 247, 264 [221 Cal.Rptr. 794, 710 P.2d 861]; accord: *United States* v. *Delaware & Hudson Co.* (1909) 213 U.S. 366, 407-408 [53 L.Ed. 836, 848-849, 29 S.Ct. 527].)

■ Regardless of our view of the social utility of this particular motion picture, our analysis must begin with the premise that a nonobscene motion picture is protected by the guaranty of free expression found in the First Amendment. (*Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495, 502 [96 L.Ed. 1098, 1106, 72 S.Ct. 777]; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 689 [68 Cal.Rptr. 721, 441 P.2d 281]; *Flack* v. *Municipal Court* (1967) 66 Cal.2d 981, 988 [59 Cal.Rptr. 872, 429 P.2d 192]; *Barrows* v. *Municipal Court* (1970) 1 Cal.3d 821, 824 [83 Cal.Rptr. 819, 464 P.2d 483].)

In *Barrows* v. *Municipal Court, supra,* 1 Cal.3d 821 this court considered the applicability of criminal penalties under the vagrancy law, section 647,

---

[5] There is also something tautological in the argument that the very acting fees by which defendant "procured" the actors ("for the purpose of prostitution") *also* constitute the payment necessary to establish the "prostitution" for which the actors are assertedly being "procured."

subdivision (a), to the live performance of a play in a theater before an audience. Although the opinion does not detail precisely what occurred, two performers, the producer and the director of the play apparently were prosecuted on account of sexually related conduct that occurred during the performance of the play.

We first noted that performance of a live play comes within the same First Amendment protection as motion pictures. The vagrancy law there at issue, section 647, subdivision (a), with its attendant requirement of lifetime registration as a sex offender, was allied to other sections prohibiting various kinds of sexual misconduct. Nothing in its history or context suggested that it was intended to apply to theatrical performances that came within the ambit of the First Amendment. The criminal penalties of the statutes there at issue, if applied to a live theatrical performance, would not only have involved serious equal protection problems, but as we stated, it was "too evident to require elaboration" that such penalties "would have an inhibiting effect upon the exercise of First Amendment rights." (*Barrows* v. *Municipal Court, supra,* 1 Cal.3d 821, 827.) We concluded that section 647, subdivision (a), was not intended to apply to live theatrical performances before an audience.

Since the acts involved here have not been adjudged obscene, they are *within the protection of the First Amendment.* To subject the producer and director of a nonobscene motion picture depicting sexual conduct to prosecution and punishment for pandering, including a special provision for ineligibility for probation attendant on such a conviction (see fn. 2, *ante*), would rather obviously place a substantial burden on the exercise of protected First Amendment rights. To include the hiring and paying of actors for acting in such a film within the definition of pandering would therefore unconstitutionally infringe on First Amendment liberties. ■ Consistent with *Barrows, Burstyn, Burton* and *Flack* and consistent with the principles of statutory construction outlined above we are thus compelled to conclude that the Legislature did not intend the antipandering law to apply to the payment of acting fees for performance in a nonobscene motion picture. We observe that if section 266i were applied in the manner urged by the People, it would include within the literal sweep of the statutory language films of unquestioned artistic and social merit, as well as films made for medical or educational purposes. We reaffirm our observation in *Barrows,* "any more restrictive rule could annihilate in a stroke much of the modern theater and cinema." (*Barrows* v. *Municipal Court, supra,* 1 Cal.3d 821, 831.)

Placing reliance on *People* v. *Fixler* (1976) 56 Cal.App.3d 321 [128 Cal.Rptr. 363], the People argue that there is a distinction between

"speech" (e.g., a film), which is constitutionally protected under the First Amendment so long as it is not obscene, and "conduct" (the making of the film), which may be prohibited without reference to the First Amendment. Such a distinction is untenable in this case. In *United States* v. *O'Brien* (1968) 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673] the United States Supreme Court set forth standards to determine the constitutional propriety of governmental regulation of "conduct" which also contains elements of "speech." ■ The factors to be considered are (1) whether the regulation is within the constitutional power of the government, (2) whether the governmental interest is important or substantial, (3) whether the governmental interest is unrelated to the suppression of free expression, and (4) whether the incidental restrictions on alleged First Amendment interests is no greater than is essential to the furtherance of the interest. (*Id.,* at p. 377 [20 L.Ed.2d at p. 680].)

■ Even if the regulation attempted here were within the constitutional power of the Legislature and the governmental interest could be found to be important, the application of section 266i in the manner advocated would clearly run afoul of the requirement that the governmental interest be unrelated to the suppression of free expression. The People have advanced two possible governmental interests: First, is the prevention of profiteering from prostitution, and second is a public health purpose, e.g., prevention of the spread of sexually transmitted diseases, such as AIDS. The governmental interest served by section 266i has been stated to be the prevention of recruitment to prostitution or of augmentation of the supply of available prostitutes. (*People* v. *Hashimoto* (1976) 54 Cal.App.3d 862, 867 [126 Cal.Rptr. 848]; *People* v. *Courtney* (1959) 176 Cal.App.2d 731, 741 [1 Cal.Rptr. 789].) Punishment of a motion picture producer for the making of a nonobscene film, however, has little if anything to do with the purpose of combatting prostitution. Rather, the self-evident purpose of the prosecuting authority in bringing these charges was to prevent profiteering in *pornography* without the necessity of proving obscenity. The fact that the People concede that a film identical to that in this case could be made lawfully if the performers were not paid also belies the asserted "public health" interest. Both these suggested "interests" not only directly involve the suppression of free expression but are, in the context of a pandering prosecution for the making of a nonobscene motion picture, not credible.

The People's reliance upon *People* v. *Fixler, supra,* 56 Cal.App.3d 321 to support defendant's conviction otherwise is also misplaced. First, the *Fixler* court failed to give sufficient consideration to the whole holding of this court in *Barrows, supra,* 1 Cal.3d 821. Secondly, *Fixler* is factually distinguishable from the instant case in a rather fundamental way. In *Fixler,* the defendants were a photo editor and photographer for American Art

Enterprises, a publisher of sexually explicit magazines. The photographers obtained "models" from modeling agencies and paid fees to the models, who were photographed engaging in various types of sexual activity, from masturbation to oral copulation and sexual intercourse. The defendants in that case were convicted of pandering based on the use of one "model," a 14-year-old girl. The Court of Appeal upheld the conviction, making the flat statement that "There can be no question but that Patricia engaged in lewd acts and sexual intercourse for money . . ." (*id.,* at p. 325) and that the defendants had therefore procured her "for purposes of prostitution."

The bald conclusion reached by *Fixler,* and reiterated in the related case of *People* ex rel. *Van de Kamp* v. *American Art Enterprises, Inc.* (1977) 75 Cal.App.3d 523 [142 Cal.Rptr. 338], at page 529, that "sexual intercourse for hire by . . . models [or actors] whose activity is photographed for [publication] . . . is prostitution" simply ignores the First Amendment considerations that compel our contrary conclusion here.[6]

Moreover, the *Fixler* court's conclusion was based primarily on a misinterpretation of a portion of this court's opinion in *Barrows* v. *Municipal Court, supra,* 1 Cal.3d 821, 830. We there stated that "acts which are *independently prohibited by law* [cannot] be consummated without sanction . . . merely because they occur during the course of a theatrical play. Dramatic license would not supply indulgence for the actual murder of the villain, the rape of the heroine, or the maiming of the hero." (Italics added.)

The *Fixler* court correctly paraphrased our language in *Barrows* in stating: "The fact that a motion picture of an actual murder, rape or robbery in progress may be exhibited as a news film or a full length movie without violating the law does not mean that one could with impunity hire another to commit such a crime simply because the primary motivation was to capture the crime on film . . ." (*Fixler, supra,* 56 Cal.App.3d at p. 326), but erroneously concluded that the defendants there had "hired" the 14-year-old model to commit the independent crime of "prostitution." The conduct was, to be sure, independently unlawful, but it was not prostitution or the procurement of prostitution; the crime was aiding and abetting unlawful sexual intercourse with a minor in violation of section 261.5. (See also *People* v. *Zeihm, supra,* 40 Cal.App.3d 1085 [cited in *Fixler,* in which the court states (without citation to authority) that exploitation of women in

---

[6]To the extent that *People* v. *Fixler, supra,* 56 Cal.App.3d 321, *People* ex rel. *Van de Kamp* v. *American Art Enterprises, Inc., supra,* 75 Cal.App.3d 523, and *People* v. *Zeihm* (1974) 40 Cal.App.3d 1085 [115 Cal.Rptr. 528] hold that the payment of wages to an actor or model who performs a sexual act in filming or photographing for publication constitutes prostitution regardless of the obscenity of the film or publication so as to support a prosecution for pandering under section 266i, they are disapproved.

making pornographic movies is prostitution, but the gravamen of which involved the use of females under the age of consent, a violation of section 261.5].)

Undeniably, one cannot lawfully hire another to commit murder, rape or robbery for the purpose of photographing the act. Murder, rape and robbery and aiding and abetting intercourse with a minor for that matter, are crimes independent of and totally apart from any payment for the right to photograph the conduct.

By contrast, the acts of alleged "prostitution" in this case were not crimes independent of and apart from payment for the right to photograph the performance. The determination that pandering and prostitution occurred here was entirely dependent on the payment for the right to photograph. Indeed, under the People's theory the payment was used to establish not only the "hiring" but also elements of both the "pandering" (procuring) and the "prostitution" (i.e., lewd acts "for money"). When considered aside from the payment of the acting fees, itself fully lawful otherwise, the sexual acts depicted in the motion picture here were completely lawful. ■■■■ ■ The sexual conduct was between consenting adults and occurred in a place not open to the public.[7] And as we have stated, the film was not determined to be obscene.

■■■ The People also rely on a number of other California and out-of-state cases to support defendant's conviction, but in each instance their reliance is misplaced.

A New York court in *People* v. *Kovner* (1978) 96 Misc.2d 414 [409 N.Y.S.2d 349], found a legislative intent on the part of the New York Legislature to include payment for acting in a film containing sexually explicit conduct within the definition of prostitution. However, *Kovner* relied uncritically on *Fixler,* failing to recognize that the *Fixler* conviction was based on unlawful sexual conduct with a minor.

In *People* v. *Maita* (1984) 157 Cal.App.3d 309 [203 Cal.Rptr. 685], a provider of live nude entertainment was convicted of multiple counts of both pimping and pandering. In affirming the convictions, the court relied on *Fixler,* and to the extent it did so its opinion is infirm. Nevertheless, *Maita* is also fundamentally distinguishable from the instant case because it

---

[7]Since decriminalization in 1975, oral copulation and sodomy performed in private between consenting adults are lawful and no longer constitute independently defined crimes. (Stats. 1975, ch. 71, §§ 7, 10, pp. 133-134; Stats. 1975, ch. 877, §§ 1, 2, pp. 1957-1958.) Thus *People* v. *Drolet* (1973) 30 Cal.App.3d 207 [105 Cal.Rptr. 824], cited in *Fixler,* does not support the result in *Fixler.*

did involve prostitution, the payment by members of the "theater" audience for sexual conduct with the "actors" hired by the theater owner for that purpose. Thus although the theater owner was acquitted on charges of presentation of obscene live conduct (§ 311.6), convictions for procuring persons for purposes of prostitution could properly be affirmed. The Court of Appeal held that the pimping and pandering laws did not prohibit live nude entertainment, but "that the entertainer cannot have sexual relations with the audience." (*Id.,* at p. 316.) Thus, the result in *Maita* was sound,[8] but it has no application to this case.

The People's reliance on an Oregon case, *State* v. *Kravitz* (1973) 14 Ore.App. 243 [511 P.2d 844], is equally misplaced. That case, like *Maita, supra,* 157 Cal.App.3d 309, involved sexual conduct between a member of the audience and a performer at the defendant's entertainment establishment.

In *United States* v. *Roeder* (10th Cir. 1975) 526 F.2d 736, the defendant was prosecuted for a violation of the Mann Act (18 U.S.C. § 2421 et seq.) for transporting a woman across state lines for the purpose of performing in a sexually explicit motion picture. The purpose of the Mann Act is, however, quite removed from and has no direct impact upon First Amendment activities. The Mann Act is directed to the conduct of transportation across state lines for an immoral purpose. So far as the Mann Act is concerned the identical conduct would not be criminal if done within a single state. Moreover, *Roeder* is singularly distinguishable from the instant case: There the defendant film producer actually participated in the sexual conduct in the film, for which he transported the woman across state lines.

Thus, the cases relied upon by the People do not support a result different from that which we have reached in this case.

## DISPOSITION

For the foregoing reasons, the judgment of the Court of Appeal affirming defendant's pandering conviction based solely on the payment of wages to the actresses in his film, which was not determined to be obscene, is reversed.

---

[8] It appears to us the conduct in *Maita* might also have supported a conviction of section 647, subdivision (a) [lewd conduct in a public place], but that offense was apparently not charged.

Mosk, J., Broussard, J., Panelli, J., Kline (J. Anthony), J.,* concurred.

Lucas, C. J., and Eagleson, J., concurred in the judgment.

---

*Presiding Justice, Court of Appeal, First Appellate District, Division Two, assigned by the Chairperson of the Judicial Council.