Merrimack
No. 2007-601

# The State of New Hampshire

v.

# Robert Theriault

Argued: October 8, 2008
Opinion Issued: December 4, 2008

124

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, attorney, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief, and *Paul Borchardt*, assistant appellate defender, orally, for the defendant.

DUGGAN, J. The defendant, Robert Theriault, was found guilty of prostitution, *see* RSA 645:2, I(f) (2007), following a bench trial in the Superior Court (*Conboy*, J.). The defendant appeals the trial court's denial of his motion to dismiss, alleging the prostitution statute is constitutionally overbroad as applied to him. We reverse.

The record reveals the following. The defendant was employed as a court security officer in Franklin District Court. On December 5, 2005, he asked a young woman, C.H., and her boyfriend, J.S., who were at the court paying fines, if they needed employment. After informing them that he could not discuss the job at the courthouse, he met them in a parking lot behind a bank. The defendant asked the couple if they wanted to make "f. . . flicks." The defendant specified the details: he would pay them fifty dollars per hour, he would rent a hotel room, and they would use temperature blankets and different condoms while the defendant videotaped them having intercourse.

C.H. and J.S. reported the incident to J.S.' mother, who in turn reported it to a court official. The defendant was charged with multiple counts of prostitution arising out of these allegations as well as another incident involving a different couple, but which did not involve a request to videotape them.

Prior to trial, the defendant moved to dismiss both the charges in this case and those arising from the other incident, claiming that the prostitution statute is constitutionally overbroad. He argued that "RSA 645:2, I(f) is written broadly, and could literally be applied to sexual contact of a nature that theatres/movies are constitutionally entitled to present." The trial court denied the motion, relying upon the definition of "sexual contact," *see* RSA 632-A:1, IV (2007) (including only conduct that is "for the purpose of sexual arousal or gratification"), to conclude that RSA 645:2, I(f) is not substantially overbroad. The trial court, however, further observed

that "sexual contact for a purpose other than sexual gratification, like producing a movie or a theatrical production, would not be subject to sanction under the statute."

The defendant was convicted, in two separate trials, of the charges arising out of the facts currently before us as well as the other charges. As to the other charges, which did not involve videotaping, the defendant appealed, arguing the statute is facially unconstitutional. We affirmed the trial court's decision. *State v. Theriault*, 157 N.H. 215 (2008). In this appeal, the defendant argues that the statute is unconstitutional as applied to the facts of this case.

The defendant argues the prostitution statute is overbroad as applied to the constitutionally protected activity of making a sexually explicit videotape. He raises his argument under the free speech protections of both the New Hampshire and Federal Constitutions. *See* N.H. CONST. pt. I, art. 22; U.S. CONST. amends. I, XIV. Because the issue before us is one of constitutional law, we review it *de novo. Theriault*, 157 N.H. at 217. The party challenging a statute's constitutionality bears the burden of proof. *State v. Pierce*, 152 N.H. 790, 791 (2005). We first address the defendant's argument under the State Constitution, citing federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231 (1983).

■ ■ Our overbreadth law is well-settled: "The purpose of the overbreadth doctrine is to protect those persons who, although their speech or conduct is constitutionally protected, 'may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression.' " *State v. Brobst*, 151 N.H. 420, 422 (2004) (quoting *New York v. Ferber*, 458 U.S. 747, 768 (1982)). "While the Constitution 'gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere,' the application of the overbreadth doctrine is 'strong medicine' to be employed 'only as a last resort.' " *Id.* (quoting *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

■ ■ As we reiterated in *Theriault*:

The substantial overbreadth doctrine applies to constitutional challenges of statutes that prohibit conduct, as well as challenges to those statutes prohibiting pure speech and conduct plus speech.

If a statute is found to be substantially overbroad, the statute must be invalidated unless the court can supply a limiting construction or partial invalidation that narrows the scope of the statute to constitutionally acceptable applications. If, on the other hand, a statute is not substantially overbroad, then whatever

overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.

*Theriault*, 157 N.H. at 217-18 (quotations omitted).

Here we must decide whether RSA 645:2, I(f) is unconstitutional as applied to the particular facts of this case. RSA 645:2, I, provides: "A person is guilty of a misdemeanor if the person: . . . (f) Pays, agrees to pay, or offers to pay another person to engage in sexual contact as defined in RSA 632-A:1, IV or sexual penetration as defined in RSA 632-A:1, V, with the payor or with another person." RSA 632-A:1, IV defines "sexual contact" as "the intentional touching whether directly, through clothing, or otherwise, of the victim's or actor's sexual or intimate parts, including breasts and buttocks. Sexual contact includes only that aforementioned conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification." RSA 632-A:1, V includes a list of sexual acts that constitute sexual penetration but does not include the provision "for the purpose of sexual arousal or gratification."

In *Theriault*, the defendant argued "that RSA 645:2, I(f) is substantially overbroad because it could be applied to criminalize constitutionally permissible activities such as the production of a non-obscene but sexually explicit movie." *Theriault*, 157 N.H. at 218. We disagreed that the statute was facially overbroad and held that "any applications of the statute that infringe upon protected conduct, to the extent that such applications exist, may be remedied on a case-by-case basis." *Id.* at 219. In doing so, we emphasized that the definition of "sexual contact" includes "for the purpose of sexual arousal or gratification." *Id.* at 218.

In this case, however, the State did not charge the defendant with offering to pay another to engage in "sexual contact," and there was no evidence or allegation that the defendant acted with "the purpose of sexual arousal or gratification." In fact, at trial, the only witness was C.H. She testified that the defendant asked her and her boyfriend if they needed employment, and if they wanted to make videos. She testified that "[h]e said that he would rent a hotel room and he would be the only one recording, so we didn't feel uncomfortable." C.H. said that the defendant offered to pay them fifty dollars per hour, and she specified: "He's just going to pay us to make the video." The trial court found that the State "proved beyond a reasonable doubt, that [the defendant] offered to pay [the couple] money, that is $50 an hour, to engage in sexual penetration. That is, [J.S.] would sexually penetrate [C.H.] while [the defendant] videotaped them."

The facts boil down to the defendant offering to remunerate the couple to have sexual intercourse while being videotaped. There was no evidence or allegation that the defendant solicited this activity for the purpose of sexual arousal or gratification as opposed to making a video. The State did not charge the defendant under the "sexual contact" portion of the statute and therefore there was no finding by the trial court that the defendant acted for the purpose of sexual arousal or gratification. Thus, if the statute constitutionally prohibits the defendant's conduct, a request to pay two individuals to make a sexually explicit video would be unprotected under the free speech guarantees of the State Constitution.

■■ "[E]xpression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952). "It cannot be doubted that motion pictures are a significant medium for the communication of ideas." *Id.* at 501. "The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform." *Id.* There is, however, a "legitimate interest in prohibiting dissemination or exhibition of obscene material when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or of exposure to juveniles." *Miller v. California*, 413 U.S. 15, 18-19 (1973) (establishing obscenity standard). "As a general rule, pornography can be banned only if obscene," *Ashcroft*, 535 U.S. at 240, and thus some pornography is protected speech.

We must decide to what extent the production of sexually explicit but non-obscene videos is constitutionally protected. Although this issue has not been widely decided in other jurisdictions, those that have addressed it are divided. *See People v. Freeman*, 758 P.2d 1128 (Cal. 1988), *cert. denied*, 489 U.S. 1017 (1989); *People v. Kovner*, 409 N.Y.S.2d 349 (Sup. Ct. 1978). The United States Supreme Court has not addressed this issue. *See California v. Freeman*, 488 U.S. 1311, 1314-15 (1989) (denying application for stay because California Supreme Court decision in *Freeman* supported by adequate and independent state grounds).

In *Kovner*, the defendant was charged with promoting prostitution arising out of the production of films that depicted explicit sexual conduct. *Kovner*, 409 N.Y.S.2d at 350. The defendant maintained a studio for the purpose of making films, paid actors and actresses to engage in sexual intercourse and recorded the activity on films he later sold. *Id.* The defendant moved to dismiss the charges. *Id. Kovner* stated: "This court is not unmindful of the fact that a literal interpretation of the prostitution laws, and their vigorous enforcement may create potentially a chilling effect on the exercise of First Amendment freedoms." *Id.* at 352. "However,

when a state undertakes to regulate a social evil such as prostitution or pornography, it has a greater power to regulate the non-verbal physical conduct which may occur than to suppress depictions or descriptions of the same." *Id.* (citing *United States v. O'Brien*, 391 U.S. 367 (1968)). *Kovner* concluded: "While First Amendment considerations may protect the dissemination of printed or photographic material regardless of the manner in which it was obtained, this protection will not shield one against a prosecution for a crime committed during the origination of the act." *Id.*

The reasoning in *Kovner* is based upon a distinction that has never been adopted by the United States Supreme Court. The Court has never held that for First Amendment purposes, there is a distinction between production and dissemination in regulating pornography. Moreover, this distinction is illogical. It would mean that sale, distribution and viewing of a non-obscene movie is constitutionally protected while production of the same movie is not. Instead, to regulate the production and dissemination of sexually explicit films, the Court has established certain categories that are simply outside First Amendment protection. *See Ferber*, 458 U.S. 747 (child pornography); *Miller*, 413 U.S. 15 (obscene material).

In addition, *Kovner* relied upon a California case, *People v. Fixler*, 128 Cal. Rptr. 363 (Ct. App. 1976), in support of its holding. In *Fixler*, the defendants were a photographer and a photo editor for a magazine devoted to the depiction of sexual activity. *Fixler*, 128 Cal. Rptr. at 364. They were convicted of pandering as a result of lewd photographs taken of a fourteen-year-old girl. *Id.* at 365. The defendants appealed the decision on First Amendment grounds. *Fixler* held that, assuming the defendants "intended to use the photographs in a nonobscene publication, the fact remains that in order to obtain these photographs they become, by definition, common panderers and were not immune from prosecution of their crimes." *Id.* at 366. *Fixler* stated:

> While First Amendment considerations may protect the dissemination of printed or photographic material regardless of the manner in which the material was originally obtained, where a crime is committed in obtaining the material, the protection afforded its dissemination would not be a shield against prosecution for the crime committed in obtaining it.
>
> The fact that a motion picture of an actual murder, rape or robbery in progress may be exhibited as a news film or a full length movie without violating the law does not mean that one could with impunity hire another to commit such a crime simply because the primary motivation was to capture the crime on film.

*Id.* at 365-66.

This reasoning was abandoned in *Freeman*. While *Freeman* distinguished *Fixler* because the conduct charged in *Fixler* was not prostitution or the procurement of prostitution, but aiding and abetting unlawful sexual intercourse with a minor, *Freeman* further explained the logical fallacy of *Fixler*: "Undeniably, one cannot lawfully hire another to commit murder, rape or robbery for the purpose of photographing the act. Murder, rape and robbery and aiding and abetting intercourse with a minor for that matter, are crimes independent of and totally apart from any payment for the right to photograph the conduct." *Freeman*, 758 P.2d at 1133-34. *Freeman* concluded that the defendant's conduct, producing a movie, did not involve an independent crime, such as murder, rape or aiding and abetting intercourse with a minor, but instead was "entirely dependent on the payment for the right to photograph." *Id.* at 1134.

In *Freeman*, the defendant was charged with pandering arising out of the hiring of actors to perform sex acts in a film. *Id.* at 1129. In construing the pandering statute, *Freeman* looked to the definition of "lewd acts," which requires "touching of the genitals, buttocks, or female breast for the purpose of sexual arousal, gratification, annoyance or offense." *Id.* at 1130 (quotations, citations and emphasis omitted). Analyzing the facts, *Freeman* stated that the only payment made was acting fees for the actors' performance in a non-obscene film, and "[t]here [was] no evidence that defendant paid the acting fees for the purpose of sexual arousal or gratification, his own or the actors'." *Id.* at 1131. *Freeman* thus held that the defendant "did not engage in either the requisite conduct nor did he have the requisite mens rea or purpose to establish procurement for purposes of prostitution." *Id.* *Freeman* qualified its holding by stating that "even if defendant's conduct could somehow be found to come within the definition of 'prostitution' literally, the application of the pandering statute to the hiring of actors to perform in the production of a nonobscene motion picture would impinge unconstitutionally upon First Amendment values." *Id.*

■ To uphold the conviction in the instant case, where the only facts adduced at trial were that the defendant offered to pay two people to have sexual intercourse while being videotaped, would infringe upon an area of speech protected by the State Constitution. *See Ashcroft*, 535 U.S. at 240 (pornography protected where not obscene). We emphasize that our holding is dictated by the specific charges and unique facts of this case. The defendant was charged with offering to pay two individuals to engage in sexual penetration while he videotaped them. We note that the State did not charge the defendant with offering to pay them to engage in sexual contact, which would have required the State to prove that he acted for "the purpose

of sexual arousal or gratification" and thus engaged in conduct that was not constitutionally protected. Thus, our holding today will not prevent the State from continuing to prosecute prostitution, even when the acts are videotaped.

Here, C.H. testified that the defendant offered to pay fifty dollars per hour "to make pornography." The only evidence in this record as to the defendant's intent is that he intended to make pornography. Moreover, the trial court found that the State "proved beyond a reasonable doubt, that [the defendant] offered to pay [the couple] money, that is $50 an hour, to engage in sexual penetration. That is [J.S.] would sexually penetrate [C.H.] while he videotaped them." There was, therefore, no finding by the trial court that the defendant's request to make a movie was for an illegitimate purpose. Thus, the defendant has met his burden to prove that RSA 645:2, I(f) is unconstitutionally overbroad as applied to the specific facts of this case.

In light of our ruling under the State Constitution, we need not address the defendant's arguments under the Federal Constitution. *See Ball*, 124 N.H. at 237.

*Reversed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.