Audrey **OWENS**, Appellant
(Defendant Below),

v.

**STATE** of Indiana, Appellee
(Plaintiff Below).

No. 2–181A18.

Court of Appeals of Indiana,
Second District.

Aug. 11, 1981.

Rehearing Denied Sept. 3, 1981.

John R. Cromer, Hammond, Cromer, Jackson & Borgmann, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Audrey Owens (Owens) appeals her conviction of prostitution pursuant to I.C. 35–45–4–2, alleging that the Act under which she was convicted was improperly enacted by the legislature, that the trial court erred in refusing to consider an opinion of the State Attorney General, that the Act in question is unconstitutionally vague, and that the evidence is insufficient to sustain her conviction.

We affirm.

## FACTS

The facts most favorable to the verdict of the trial court are as follows:

On March 6, 1980, officer Brent Faust (Faust) of the Anderson, Indiana police department entered a business establishment in Anderson known as Brandy's Rubdown Palace. He met Owens in the waiting area, she led him back to a room containing a bed, nightstand, and price list for services posted on the wall. Owens explained the pricing schedule to Faust, including, as the top of the series, a massage "including the breast release" for $35.00 (*R.* at 89). When Faust asked Owens to describe that massage, "[s]he said a normal massage and that she would be topless, that she would straddle my body with hers. And she would put my penis between her breasts until I had an ejaculation." (*Id.*) Following that explanation Faust told Owens that he was a police officer, and that she was under arrest for prostitution.

Following a bench trial before the Delaware County Court, Room # 2, Owens was convicted of prostitution, a Class A Misdemeanor, fined $2,500, and sentenced to the Indiana Women's Prison for one year. She posted appeal bond and perfected this appeal.

## ISSUES

Owens presents the following issues (as consolidated by this court):

1. Did the trial court err in refusing to consider the legislative history of I.C. 35–45–4–2, under which Owens was charged and convicted?

2. Did the trial court err in refusing to consider an opinion of the Attorney General of Indiana regarding I.C. 35–45–4–2?

3. Did the trial court err in failing to find I.C. 35–45–4–2 unconstitutionally vague?

4. Was the evidence sufficient to sustain Owens' conviction?

## DECISION

ISSUE ONE—Did the trial court err in refusing to consider the legislative history of I.C. 35–45–4–2 under which Owens was charged and convicted?

CONCLUSION—The trial court did not err in refusing to consider the legislative history of I.C. 35–45–4–2.

Owens presents us with an involved argument supporting her claim that the trial

court erred in refusing to look into irregularities surrounding the legislative background of I.C. 35–45–4–2. Essentially, she asks us to find error because the trial court did not set aside her conviction due to the fact the prostitution act under which she was convicted and sentenced started life as a public utilities regulation bill, and, through the vagaries of the committee process, ended up in its present form. Owens attacks this statute's constitutionality not by arguing that the law as signed by the Governor manifests irregularities on its face, but rather by claiming that it is flawed by mere procedural irregularities which occurred early in the legislative process. The bill as passed was thus valid on its face.

■ In the words of Oliver Wendell Holmes, "the elaborate argument does not need an elaborate answer." For more than a century, Indiana courts have refused to look behind the procedures leading to the enactment of legislation, and have followed instead the "Enrolled Act Rule." Provided the Act in question bears the signature of the presiding officers of the General Assembly, the courts of this state conclusively presume that the law is valid.

> "[I]n 1869 the doctrine of determining the validity of the action of the General Assembly by reference to its legislative journals was swept away like a sand castle in a flood tide of contrary judicial pronouncements, beginning with the landmark case of *Evans v. Browne* (1869) 30 Ind. 514 followed by ... Indiana Supreme Court decisions to the same effect."

*Roeschlein v. Thomas*, (1972) 258 Ind. 16, 280 N.E.2d 581 at 586 adopting *in toto* Ind.App., 273 N.E.2d 554.

■ The rule binding Indiana courts is that to go behind the constitutional authentication of a bill is unauthorized *Id.* at 587. Our Supreme Court has rejected the "essentially mischievous doctrine" of looking into legislative journals to determine the validity of an Act, *Taxpayers Lobby of Indiana v. Orr*, (1974) 262 Ind. 92, 311 N.E.2d 814, 821, and we are bound by those pronouncements.

The trial court committed no error in refusing to depart from the well settled rule.

ISSUE TWO—Did the trial court err in refusing to consider an opinion of the Attorney General of Indiana regarding I.C. 35–45–4–2?

CONCLUSION—The trial court did not err by refusing to consider the opinion of the Attorney General.

Owens claims that the trial court should have considered authority offered by her in the form of 1979 Op. Atty. Gen'l. 180 (Constitutional Review of House Enrolled Act No. 1030). In pertinent part, this opinion states:

> I have examined House Enrolled Act No. 1030, and, in my opinion, it may be constitutionally defective.
>
> The Engrossed House Bill would have amended I.C. 8–1–2–42 concerning rates for certain public utilities; however, the Enrolled Act arrived with an entirely different subject matter.
>
> It would amend IC Chapter 35–45–4 to expand the definition of the Acts [capitalization sic] which when performed for money or other property constitute commission of prostitution . . .
>
> Whatever the views of the militants, the Constitution of Indiana does not equate public utilities with prostitution.

*Id.*

■ The foregoing opinion was provided by the Attorney General to the Governor. 1979 Op. Atty. Gen'l. at 101. Its effect as legal authority was drastically limited when the Governor signed the legislation in question. The Enrolled Act Rule, discussed in Issue One, *supra*, became applicable to I.C. 35–45–4–2 upon that occurrence, and limits the permissible scope of judicial inquiry. *Orr, Roeschlein, supra.* Because the opinion of the Attorney General dealt with the status of what was to become I.C. 35–45–4–2 *before* its enactment, that opinion, in a manner similar to legislative journal entries, is not persuasive authority for the courts.

ISSUE THREE—Did the trial court err in failing to find I.C. 35–45–4–2 unconstitutionally vague?

CONCLUSION—I.C. 35–45–4–2 is not unconstitutionally vague.

Owens was convicted under the following statute:

A person who knowingly or intentionally:

(1) Performs, or offers or agrees to perform sexual intercourse or deviate sexual conduct; or

(2) *Fondles, or offers or agrees to fondle, the genitals of another person;*

for money or other property commits prostitution, a Class A misdemeanor.

I.C. 35–45–4–2. (emphasis added).

Owens claims that the statute is unconstitutionally vague because of its use of the word "fondle." Our inquiries have disclosed no Indiana cases defining this term or construing this statute. Consequently, we must evaluate the terminology of this statute bearing in mind that "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense." I.C. 1–1–4–1.

Leading dictionaries are fairly consistent in their definitions of "fondle:" "to treat with tenderness, to caress," *Webster's New Twentieth Century Dictionary* (2d ed., unabridged 1978); "to handle or stroke with affection; caress lovingly with the hands," *The American Heritage Dictionary of the English Language* (1970). In turn, "caress" is defined: "to touch, stroke, or pat lovingly or gently; also, to embrace or kiss," *Webster's, supra*; "to touch or stroke in an affectionate manner," *American Heritage, supra*. These definitions embody the elements of non-forcible physical contact. Manual manipulation per se is not an essential element of "fondling." One dictionary (*Webster's*) does not mention it at all, and the other (*American Heritage*) mentions "handling" followed by a disjunctive "*or* stroke with affection." The common meaning of "fondle" thus seems to encompass the conduct offered to be performed by Owens.

Acceptance of the foregoing definitions is consistent with the existing case law on the subject of "fondling." In *Almaguer v. State*, (1951) 155 Tex.Cr.R. 531, 237 S.W.2d 631, a rape conviction was reversed on the theory that the forcible element inherent in rape necessarily abrogates any "caressing" element present in "fondling." The court in *Almaguer* focused on the elements of force and threats as the crucial factors foreclosing the possibility of "fondling" and specifically conceded that one person could "fondle" another by making use of appendages other than hands. *Accord, Gay v. State*, (1877) 2 Tex.App. 127 (defining "fondle"); *See also, Lason v. State*, (1943) 152 Fla. 440, 12 So.2d 305; *People v. Garcia*, (1971) 3 Ill.App.3d 365, 279 N.E.2d 741. Criminal courts have often taken cognizance of the line between consensual and forced physical interaction as being dispositive of ultimate issues. *See, e. g., Packineau v. United States*, (8th Cir. 1953) 202 F.2d 681 (metamorphosis of physical interaction from "non-criminal dalliance" to attempted rape).

■ Based upon the common meaning of the term as found in standard dictionaries, and also as supported by the case law, we conclude that "fondle" as used in I.C. 35–45–4–2 clearly and unequivocally refers to consensual physical contact between persons which may or may not be manual. We conclude that this meaning for the term "fondle" is not obscure, and states reasonably clear guidelines understandable to "law enforcement officials and triers of fact." *Smith v. Goguen*, (1974) 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605.

Applying the terms of the statute to Owens' conduct, the evidence shows she knowingly offered to fondle the genitals of another person for money.

■ Finally, Owens claims that this statute abridges her constitutional rights to freedom of expression, privacy, association, and her right to earn a living. We find these arguments unpersuasive in light of the countervailing legitimate state interests justifying this application of its police powers. *See, e. g., Paris Adult Theatre I v.*

*Slaton*, (1973) 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446; *Pollard v. Cockrell*, (5th Cir. 1978) 578 F.2d 1002; *City of Indianapolis v. Wright*, (1978) 267 Ind. 471, 371 N.E.2d 1298.

ISSUE FOUR—Was the evidence sufficient to sustain Owens' conviction?

CONCLUSION—This issue is waived.

■ Although properly preserved in her Motion to Correct Errors and the "Issues" section of her brief, Owens fails to address any argument whatsoever to the issue of the sufficiency of the evidence upon which she was convicted. Accordingly, the question is waived. A.R. 8.3(A)(7).

■ Even had this issue been properly addressed by Owens, she would not have prevailed. Both Owens and Faust testified to substantially the same set of facts regarding their encounter at Brandy's Rubdown Palace. It is not the function of this court to re-weigh the evidence *Jones v. State*, (1978) 268 Ind. 640, 377 N.E.2d 1349; *Lockhart v. State*, (1884) 92 Ind. 452. We consider only that evidence most favorable to the state along with all reasonable and logical inferences to be drawn therefrom. *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. The evidence presented in this record, which has been discussed previously, is sufficient to sustain Owens' conviction.

AFFIRMED.

MILLER (sitting by designation) and SHIELDS, JJ., concur.