Denise C. WEBB, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49A02–8901–CR–00029.

Court of Appeals of Indiana,
Second District.

Aug. 13, 1991.

Michael G. Ruppert, Ruge & Ruppert, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Denise C. Webb appeals her conviction of prostitution, a class A misdemeanor.[1]

We affirm.

### ISSUES

Webb presents several arguments on appeal which we restate as follows:

1. Whether Webb's conduct is regulated by Indiana's obscene performance statute, and thus cannot be prosecuted as prostitution;

2. Whether the statutory definition of "deviate sexual conduct" is unconstitutionally vague;

3. Whether the prostitution statute is unconstitutionally overbroad;

4. Whether the evidence is insufficient to sustain Webb's conviction; and

5. Whether Webb was entrapped.

---

1. A person who knowingly or intentionally:

 (1) performs, or offers or agrees to perform, sexual intercourse or deviate sexual conduct; or

 (2) fondles, or offers or agrees to fondle the genitals of another person;

for money or other property commits prostitution, a Class A misdemeanor. However, the offense is a Class D felony if the person has two (2) prior convictions under this section. IC 35-45-4-2 (1988).

## FACTS

As part of an Indianapolis Police Department investigation of the Dulcet modeling and escort service, informant Brian Barnes telephoned Dulcet on June 11, 1987, arranging for a "fantasy session" in his room at the Hilton Hotel in downtown Indianapolis. Webb arrived at the hotel with a driver, to whom Barnes paid $150. During the "session," Barnes twice attempted to persuade Webb to permit him to perform cunnilingus on her in exchange for which he would pay her an additional $200. She declined both offers. She did, however, perform a "bed dance," in which she danced over Barnes while disrobing. Barnes testified Webb subsequently inserted a flesh-colored penis-shaped object, referred to alternatively as a "dildoe" and a "special vibrator," into her anus in exchange for an additional payment of $50.

## DECISION

### I. OBSCENE PERFORMANCE STATUTE

██ Claiming her alleged conduct falls within the prohibitions of both the prostitution[2] and obscene performance[3] statutes, Webb argues the separate criminal statutes are *in para materia*, and an "irreconcilable conflict" exists between them because only the obscene performance statute provides "a framework for determining if a performance which involves sexual conduct—but no sexual *contact*—is or is not protected by the First Amendment of the United States Constitution." Appellant's Brief at 25. Because this "irreconcilable conflict" exists, Webb continues, the more detailed statute prevails as to the subject matter it covers. Hence Webb concludes, given the nature of her alleged criminal conduct, her conviction for prostitution is contrary to law because she should have been prosecuted only under the more specific and detailed obscene performance statute.

Webb's argument is innovative but unavailing. The statutes are not in conflict.

Both the prostitution statute and the obscene performance statute prohibit certain conduct; neither statute explicitly authorizes any conduct proscribed by the other. A conflict between the statutes is not created by the possibility the overlapping proscriptions may give rise to double jeopardy issues or by the inclusion of an obscenity provision in only one of the two statutes.

### II. VAGUENESS

██ Webb argues the statutory scheme under which she was convicted is void for vagueness because it does not provide adequate notice the sexual conduct required to support a charge of prostitution need not involve bodily contact with another person.

When the constitutionality of a statute is challenged, we begin with a presumption of validity. A penal statute must provide individuals with adequate notice of the consequences of contemplated conduct. If individuals of ordinary intelligence must guess at its meaning or would reasonably differ as to its application, the statute is void for vagueness. *Van Sant v. State* (1988), Ind. App., 523 N.E.2d 229, 233.

Under Indiana law, prostitution must have as its object sexual intercourse, deviate sexual conduct, or the fondling of another person's genitals. IC 35-45-4-2. Webb was charged with agreeing to perform deviate sexual conduct for money; the specific conduct involved was an act of anal self-insertion with a physical object.

"Deviate sexual conduct" is defined in relevant part as "the penetration of the sex organ or anus of a person by an object." IC 35-41-1-9 (1988). Neither the definition of deviate sexual conduct nor the statute proscribing prostitution[4] requires the participation of more than one person in the act of penetration. *Cf. People v. Greene* (1981), N.Y.Crim.Ct., 110 Misc.2d 40, 441 N.Y.S.2d 636 (prostitution statute specifying sexual conduct "with another person" held to exclude "autoerotic" conduct).

---

**2.** IC 35-45-4-2, *supra* note 1.

**3.** IC 35-49-3-2 (1988).

**4.** IC 35-45-4-2, *supra* note 1.

The prostitution statute places Webb and other persons on notice an agreement to perform deviate sexual conduct for money is prohibited; the statutory definition of deviate sexual conduct specifically includes anal insertion. Read together, the statutes are sufficiently clear to permit persons "[to] reasonably steer between lawful and unlawful conduct, with confidence that they know what [the statutes'] terms prohibit." *American Booksellers Ass'n., Inc. v. Hudnut* (1984), S.D.Ind., 598 F.Supp. 1316, 1339, *aff'd*, (1985), 7th Cir., 771 F.2d 323, *aff'd*, (1986), 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291.

## III. OVERBREADTH

Webb argues the prostitution statute is unconstitutionally overbroad as applied to the facts of her case because her conduct is presumptively protected by the first amendment as evidenced by the legislature's enacting the obscenity and pornography statute, IC 35-49-1-1 *et seq.*, (1988) which establishes certain procedural safeguards and substantive standards to determine if sexual performances can be penalized.

▪ The State argues Webb's conduct, as a matter of law, is obscene and, therefore, the argument her conduct is protected by the first amendment is without merit. In support of its argument the State relies upon *Sedelbauer v. State* (1984), Ind.App., 462 N.E.2d 244, *transfer denied; Richards v. State* (1984), Ind.App., 461 N.E.2d 744, *transfer denied; Sedelbauer v. State* (1983), Ind.App., 455 N.E.2d 1159, *transfer denied;* and *Owens v. State* (1981), Ind. App., 424 N.E.2d 169, *transfer denied.* The *Sedelbauer* cases and the *Richards* case involve charges of distributing obscene material brought under IC 35-30-10.1-2 (1982) (repealed 1983), *recodified at* IC 35-49-3-1 (1988). In each case a jury found the materials in question to be obscene, applying the standards elucidated in *Miller v. California* (1973), 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419, and incorporated in IC 35-30-10.1-1(c) (1982) (repealed 1983), *recodified at* IC 35-49-2-1 (1988). None of these cases speak of "ob-

scenity as a matter of law", and none hold that something may be considered obscene before it has been evaluated by a trier of fact under the *Miller* standards. In these cases the court exercised the "ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." *Miller v. California* (1973), 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419. As the United States Supreme Court said in *Jenkins v. Georgia* (1974), 418 U.S. 153, 160, 94 S.Ct. 2750, 2754, 41 L.Ed.2d 642:

But all of this does not lead us to agree with the Supreme Court of Georgia's apparent conclusion that the jury's verdict against appellant virtually precluded all further appellate review of appellant's assertion that his exhibition of the film was protected by the First and Fourteenth Amendments. Even though questions of appeal to the "prurient interest" or of patent offensiveness are "essentially questions of fact," it would be a serious misreading of *Miller* to conclude that juries have unbridled discretion in determining what is "patently offensive." Not only did we there say that "the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary," 413 U.S., at 25 [93 S.Ct., at 2615], 37 L Ed 2d 419, but we made it plain that under that holding "no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct...." *Id.*, at 25 [93 S.Ct., at 2615], 37 L Ed 2d 419.

Thus "obscenity as a matter of law" exists only in the sense that an appellate court determines the jury's verdict falls within constitutional boundaries. It certainly does not exist in the sense that it is used by the State, i.e., that certain conduct is obscene without proof that it meets the *Miller* test.

*Owens* also does not support the State's argument. In *Owens* this court affirmed a

conviction for prostitution by genital fondling as proscribed by IC 35–45–4–2(2). However, contrary to the State's characterization, *Owens* does not hold prostitution—even where the sexual conduct involves actual contact—is beyond the scope of the protection afforded by the first amendment; that issue was not raised.

■ In determining the issue of overbreadth we are mindful Webb's conduct was a non-obscene performance. Webb was convicted of prostitution without a determination her conduct was obscene. Without that determination we are required to assume Webb's conduct was not obscene. *People v. Freeman* (1988), 46 Cal.3d 419, 423, 758 P.2d 1128, 1130, 250 Cal.Rptr. 598, 599, *cert. denied* (1989), 489 U.S. 1017, 109 S.Ct. 1133, 103 L.Ed.2d 194; *see Fort Wayne Books, Inc. v. Indiana* (1989), 489 U.S. 46, 109 S.Ct. 916, 925, 103 L.Ed.2d 34, 48. Then, Webster's Third New International Dictionary, 1976, defines "performance" as a public presentation or exhibition while an Indiana statute defines "performance" as "any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated, or live, performed before an audience of one (1) or more persons." IC 35–49–1–7 (1988). *Accord People v. Greene* (1981), N.Y.Crim. Ct., 110 Misc.2d 40, 441 N.Y.S.2d 636, 638 ("[A]uto-erotic exhibitions, performed for a fee before an audience (albeit an audience of one), may certainly be 'performances' as that term has been traditionally defined and as it is specifically defined [by statute]"). Therefore, we must determine whether Webb's non-obscene performance constituted expression protected by the first amendment and not legitimately subject to State regulation.

■ As a non-obscene performance, Webb's conduct falls within the scope of the first amendment and any regulation of its content must pass muster under the Supreme Court's *O'Brien* test.

> [W]hen "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.... [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of that interest.

*United States v. O'Brien* (1968), 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672.

■ Certainly prostitution is not a constitutionally protected activity and it is an activity which the State has a strong interest in regulating. *See, O'Brien; United States v. Roeder,* 526 F.2d 736 (10th Cir. 1975), *cert. denied* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976); *People v. Souter* (1981), 125 Cal.App.3d 563, 178 Cal. Rptr. 111; *See also, People v. Maita* (1984), 157 Cal.App.3d 309, 203 Cal.Rptr. 685.

■ Ordinarily the State need only demonstrate a legitimate interest to support use of its police power to regulate prostitution. *Owens v. State* (1981), Ind.App., 424 N.E.2d 169, 172, *transfer denied.* However, because Webb's conduct is expressive, i.e., before an audience, the State must demonstrate a substantial or compelling interest. *O'Brien.* Under *O'Brien,* the substantial or compelling governmental interest furthered by governmental regulation must be "unrelated to the suppression of free expression." 391 U.S. at 377, 88 S.Ct. at 1679.

■ Applying the *O'Brien* test, we find Indiana's prostitution statute, criminalizing the subject autoerotic conduct, is within the constitutional power of the State and furthers substantial governmental interests. The perceived evil the statute seeks to address is not autoerotic dancing but the evils associated with prostitution as evidenced by the requirement the autoerotic conduct be done "for money." Thus it is blatant commercialization of the sexual conduct that is subject to legislative censure as

opposed to the conduct itself. A reasonable inference is the legislature included autoerotic acts within the prohibition against prostitution for the same reason other traditional acts of prostitution, those involving sexual contact, were included and not, as Webb argues, as an attempt to regulate content rather than conduct. Substantial governmental interests in limiting prostitution stem from the realization that prostitution breeds criminal activity and victimizes society by degrading persons who participate in the activity.

Statutes prohibiting prostitution are designed to protect public order and safety and public welfare and fall within the traditional police power of the States defined as the authority to provide for the public order, safety and welfare. *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446. In *Barnes v. Glen Theatre, Inc.* (1991), — U.S. —, 111 S.Ct. 2456, 115 L.Ed.2d 504, the Supreme Court concluded Indiana's public indecency statute [5] furthers a substantial government interest in protecting order and morality. Clearly, the statute criminalizing sexual conduct for money, even of an autoerotic nature, furthers the substantial governmental interest in protecting public order and safety and welfare.

Indiana has not proscribed Webb's consensual conduct except for compensation. Applying the four-part *O'Brien* test, we hold the subject statute, proscribing autoerotic deviate sexual conduct, is justified despite its incidental limitations on the expressive activity of the dance. The statute is clearly within the constitutional power of the State and furthers substantial governmental interests. The statute's purpose of protecting societal order and safety and welfare to the same extent as the other prohibited acts of prostitution are self-evident.

The prohibition against self-penetration for commercial gain is not overbroad. Therefore, Indiana's prostitution statute can constitutionally be applied to prohibit Webb's conduct although it constitutes a non-obscene performance.

## IV. SUFFICIENCY OF THE EVIDENCE

■■■ In reviewing sufficiency of the evidence, we look only to the evidence favorable to the verdict and all reasonable inferences to be drawn therefrom. We neither weigh conflicting evidence nor judge the credibility of the witnesses. The conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer that the defendant was guilty beyond a reasonable doubt. *Luginbuhl v. State* (1987), Ind.App., 507 N.E.2d 620, 622, *transfer denied.*

■■■ The elements of prostitution, as charged in this case, are that the defendant (1) knowingly or intentionally (2) agreed to perform (3) deviate sexual conduct (4) for money.[6] IC 35-45-4-2 (1988). Webb contends the State did not prove the deviate sexual conduct element and points to an alleged inconsistency between Barnes's testimony and the property report introduced at trial.

Barnes testified he watched Webb insert an object into her anus. Contradictions in the evidence are resolved by the trier of fact; this court will not disturb its conclusion. The evidence is sufficient to support the conclusion Webb violated the statute.

## V. ENTRAPMENT

■■ Finally, Webb claims that, assuming she committed conduct proscribed by the statute, she was the victim of entrapment. The defense of entrapment is available when the prohibited conduct is the product of a law enforcement officer or agent persuading the defendant to engage in the conduct which the defendant was not predisposed to commit. IC 35-41-3-9 (1988); *Gilley v. State* (1989), Ind., 535 N.E.2d 130, 131. Entrapment is a question for the trier of fact. *Id.* at 132.

5. IC 35-45-4-1 (1988).

6. The information charged that Webb "did unlawfully and knowingly, (agree to perform) with Brian Barnes an act of (deviate sexual conduct, to-wit: inserting a sexual device in her anus) for property, to-wit: $50.00." Record at 23.

 The State points to numerous facts and circumstances placed in evidence at trial which support a reasonable fact finder's determination Webb was predisposed to commit deviate sexual conduct for money. For example, Webb came to Barnes's hotel room, equipped with lubricants and an assortment of flesh-colored penis-shaped objects, for the admitted purpose of providing him with a sexually-oriented "fantasy session" in exchange for money. As with Webb's general insufficiency claim, this court will not disturb the conclusion reached by the trier of fact on the issue of entrapment.

Judgment affirmed.

SULLIVAN, J., concurs.

CONOVER, J., concurs in result with separate opinion.

CONOVER, Judge, concurring in result.

I disagree with the majority's claim we are required to assume Webb's "performance" was not obscene, as is the case in California. The matter at issue has been determined to be obscene by the fact finder below, and in this appeal on independent review, I determine it to be obviously so. It was "patently offensive 'hard core' sexual conduct," and fell within the exception carved out by *Jenkins v. Georgia* (1974) 418 U.S. 153, 160, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642. Accordingly, we are not compelled to make such assumption.

Otherwise, I agree with the majority and concur in result.