Richard Lee DAVIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9211–CR–552.

Court of Appeals of Indiana, Second District.

June 15, 1994.

Kay A. Beehler, Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana, Jodi Kathryn Rowe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

KIRSCH, Judge.

Richard Lee Davis appeals his conviction by jury of murder.[1] We affirm.

1. IC 35–42–1–1 (1988 Ed.).

## ISSUES

We restate the issues for our review as:

1. Whether there was sufficient evidence to sustain Davis' conviction.

2. Whether the trial court's refusal to admit hearsay evidence of a third-party confession to the murder was error.

3. Whether the trial court erred by admitting a videotape of the crime scene into evidence.

4. Whether the trial court properly instructed the jury regarding the elements of murder.

## FACTS

The facts most favorable to the jury's verdict show that, beginning in January 1990, Davis rented a house at 412 North Berwick in Indianapolis, Indiana. Early in March of that year Robert Buck moved in with Davis. Both Davis and Buck were correctional officers working for the Indiana Department of Correction.

On March 29, 1990, Buck was driven to work by Davis and driven home by William Leftridge, another correctional officer. Leftridge is the last person who admits seeing Buck alive. After March 29, 1990, Davis told a number of individuals, including their landlord and co-workers, that Buck had flown to Texas.

In late April, Davis told a friend, Robert Wood, that he had killed his roommate with a knife. He said that he had left the body in their residence and had thrown clothes over it. He said that he was concerned that someone would find the body.

On May 2, 1990, Davis reported Buck's death to the Indianapolis Police Homicide Office. He told the police that when he returned home on March 30, 1990, he found Buck, already dead, laying on the floor. He stated that he washed the blood off a kitchen knife that was next to Buck's body and put the knife in a drawer; he then put Buck's body in the basement, covered it with cloth-

ing and cleaned the area where he found Buck's body.

The police went to the house on north Berwick and found a badly decomposed man's body in the basement. The body was subsequently identified as Robert Buck. An autopsy disclosed that he had died of multiple stab wounds to his chest and abdomen.

We will state additional facts as necessary.

## DISCUSSION AND DECISION

### ISSUE ONE: SUFFICIENCY OF THE EVIDENCE

Davis contends there is no proof that he killed Buck or that he intended to kill Buck, treating the alleged lack of proof as a single issue. So shall we.

■ In a criminal case, determination of an accused's guilt or innocence is a matter for the trier of fact; in this case, a jury. *See Davis v. State* (1968), 251 Ind. 133, 138, 239 N.E.2d 601, 604. When we review the sufficiency of the evidence supporting a conviction, we may not reweigh the evidence or judge the credibility of the witnesses. *Webb v. State* (1991), Ind.App., 575 N.E.2d 1066, 1071, *trans. denied.* Where the evidence is in conflict, we are bound to consider only that evidence which is most favorable to the jury's verdict. *Id.* If there is substantial evidence of probative value supporting the conviction, we must affirm. *Adams v. State* (1989), Ind.App., 542 N.E.2d 1362, 1366.

■ To convict Davis of Buck's murder, the jury was required to determine, beyond a reasonable doubt, that Davis knowingly or intentionally killed Buck. *See* IC 35–42–1–1 (1992 Supp.). Davis has not disputed that Buck was killed, leaving only two elements of the crime to be considered: did Davis kill Buck, and if so, did Davis intend to kill Buck?

■ Sufficient evidence was introduced from which the jury could determine that Davis killed Buck: Davis confessed, to his friend Robert Wood, that he killed his roommate. Davis and Buck had quarreled over the rent each owed for the house they shared. Shortly after Buck was murdered,

Davis hid Buck's body and cleaned up the crime scene. Davis remained in the house with Buck's body for more than a month before he reported the death to the police, and that report was made only after he believed the body had been discovered by an unknown visitor to his house.

After he concealed Buck's body, Davis explained Buck's absence by telling people that he had gone to Texas. An accused's attempt to conceal his participation in a crime may be considered by the jury as evidence of guilt. *Harris v. State* (1972), 258 Ind. 341, 344, 281 N.E.2d 85, 87. Here, Davis' attempt to conceal Buck's murder and his lies about Buck's whereabouts could be considered by the jury as evidence of Davis' guilt and assigned whatever weight and value the jury thought appropriate. *See Reno v. State* (1967), 248 Ind. 334, 337–38, 228 N.E.2d 14, 15–16 (jury may consider false statements to police as evidence of guilt).

■ Sufficient evidence was also introduced from which the jury could determine that Davis intended to kill Buck. Inasmuch as intent, as an element of murder, involves the mental state of the murderer, the trier of fact must usually resort to circumstantial evidence or reasonable inferences drawn from examination of the circumstances surrounding the crime to determine intent. *See Stanley v. State* (1988), Ind., 531 N.E.2d 484, 485. Dr. Michael Clark, the forensic pathologist and Deputy Coroner, testified that Buck was stabbed at least seven times and his death was caused by multiple stab wounds to his chest and abdomen. It may be inferred from his use of a deadly weapon in a manner that was likely to cause death or great bodily harm that Davis intended to kill Buck. *See Light v. State* (1989), Ind., 547 N.E.2d 1073, 1082. From the totality of the evidence, the jury could determine beyond a reasonable doubt that Davis committed murder.

### ISSUE TWO: EXCLUSION OF HEARSAY

At trial, Davis sought to introduce evidence of a purported confession by others to Buck's murder. The trial court sustained the State's objection that the confession was inadmissible hearsay.

Davis' trial counsel made an offer to prove in which he explained that Michael Frazier, an inmate at the Indiana Youth Center at Plainfield, would have testified that Gary Jennings, a fellow prisoner, told Frazier that two men, identified only as Ziggy and Hollywood, had confessed to Jennings that they had murdered a correctional officer. At the time of Davis' trial, Jennings was a fugitive who could not be located and was unavailable to testify. Ziggy and Hollywood also could not be located.

■ Davis contends that the alleged confession by Ziggy and Hollywood, although hearsay, is admissible under "Fed.R.Evid. 804(b)(5)(A)(B)(C)." *Appellant's Brief* at 11. This rule applies only to proceedings in federal court.[2] We have previously held that our supreme court, in *Thomas v. State* (1991), Ind., 580 N.E.2d 224, adopted Fed. R.Evid. 804(b)(3) as the law in Indiana. *See Bardonner v. State* (1992), Ind.App., 587 N.E.2d 1353, 1363. Fed.R.Evid. 804(b)(5) has not been adopted.[3]

■ Even if Fed.R.Evid. 804(b)(5) were applicable, Ziggy and Hollywood's alleged confession would not be admissible. The rule, in part, provides that: "[A] statement may not be admitted under this exception unless the proponent of it makes known to the adverse party ... the name and address of the declarant." In this case, Ziggy and Hollywood are the declarants. Because Davis cannot provide a name or address for either declarant, their alleged confession would not be admissible.

The State replies that Ziggy and Hollywood's confession was a declaration against penal interest, but that it contained insufficient indicia of trustworthiness to qualify under the exception to the hearsay rule embodied in Fed.R.Evid 804(b)(3) as adopted by our supreme court in *Thomas*. Although declarations against proprietary and pecuniary interest have long been admitted into evidence as exceptions to the hearsay rule, that treatment has not been extended to declarations against penal interest.[4]

■ In *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, the United States Supreme Court held that the Fourteenth Amendment guarantee to a fair trial could, under some circumstances, override a state's interest in enforcing its criminal rules of evidence. 410 U.S. at 302–03, 93 S.Ct. at 1049. Article 1, Section 12 of the Indiana Constitution offers similar guarantees. States may not exclude reliable hearsay evidence of third-party confessions when direct evidence is unavailable.[5] *Chambers*, 410 U.S. at 302–03, 93 S.Ct. at 1049. Our supreme court accepted the reasoning of the United States Supreme Court in *Chambers* and specifically adopted Fed.R.Evid. 804(b)(3) as the law in Indiana. *Thomas*, 580 N.E.2d at 427.

The newly adopted Indiana Rules of Evidence appear to have eased the reliability requirement for admissions against penal interest found in *Chambers* and in the federal rule. That rule, in part, provides that: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3). That sentence is omitted from the Indiana version of the rule, Ind.Evidence Rule 804(b)(3). Due to the change, it is no longer clear what, if any, indicia of trustworthiness is required for admission of a confession as a declaration against penal interest under the Indiana rule.

■ In our decision today we do not reach the issue of the admissibility of Ziggy and Hollywood's confession as a declaration against penal interest because the vehicle through which that confession is offered, Frazier's testimony, is itself hearsay. Frazier, the offered witness, did not hear the

---

2. Fed.R.Evid. 101.

3. Even after the adoption of the Indiana Rules of Evidence on January 1, 1994, there is no state rule equivalent to Fed.R.Evid. 804(b)(5).

4. For a brief history of the exclusion of declarations against penal interest, see *Thomas*, 580 N.E.2d at 225–26.

5. This exception is now recognized in Fed. R.Evid. 804(b)(3) and, after January 1, 1994, in Ind.Evidence Rule 804(b)(3).

alleged confession that Davis wishes to introduce into evidence. Frazier would merely be testifying to what he was told by Jennings. While Jennings' testimony as to Ziggy and Hollywood's confession might be admissible as an exception to the hearsay rule for a declaration against penal interest, no exception applies to Frazier's testimony about Jennings' description of that confession. Imparting his version of Ziggy and Hollywood's confession to Frazier does not operate against Jennings' penal interest, nor does it fit within any other recognized exception to the hearsay rule. Frazier's testimony that Jennings told him that Ziggy and Hollywood had confessed to killing a correctional officer is hearsay within hearsay, or multiple hearsay. As such, each level of hearsay must qualify under an exception to the hearsay rule. *Hinkle v. Garrett–Keyser–Butler Sch. Dist.* (1991), Ind.App., 567 N.E.2d 1173, 1179, *trans. denied.*[6]

██ Davis argues that corroboration of Frazier's testimony was provided by Robert Fisher, an investigator working for Davis. Fisher would testify that he spoke to Jennings and that Jennings told him of Ziggy and Hollywood's alleged confession. For purposes of our analysis, it does not matter whether the proposed witness is Frazier, Fisher or both. Each received his information about the alleged confession from Jennings. Neither witness spoke with the declarants, so testimony by either Frazier or Fisher would still be multiple hearsay. Because no exception to the hearsay rule applied to Frazier's, or Fisher's, testimony about what they were told by Jennings, the trial court properly excluded testimony concerning the confession.

## ISSUE THREE: ADMISSION OF CRIME SCENE VIDEOTAPE

State's Exhibit No. 18B is a silent videotape of the crime scene, taken at the time the victim's body was uncovered by the police. The videotape shows the police investigation of the interior of Davis and Buck's house and concludes with the uncovering of Buck's body in the basement. At the time of the video-

tape, Buck had been dead for more than a month.

██ Davis objected to the introduction of the videotape at trial as being gruesome and cumulative of photographs already introduced. Otherwise relevant and material photographs are not rendered inadmissible merely because they depict a gruesome, revolting, or inflammatory scene. *Wesby v. State* (1989), Ind., 535 N.E.2d 133, 136. To demonstrate error on appeal, Davis must show that the probative value of the videotape was outweighed by an improper influence on the jury to such an extent that the videotape's admission into evidence was unduly prejudicial. *See Mitchell v. State* (1990), Ind., 557 N.E.2d 660, 665.

██ Admittedly, the videotape showing the victim's decomposed body is gruesome, but no more so than the photographs which were admitted without objection by Davis. In the exercise of its discretion, the trial court may admit photographs which graphically depict the victim's injuries. *Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386, 1389. A photograph showing the victim's corpse is admissible, unless its tendency to inflame and impassion the jury against the defendant outweighs its relevance. *Smith v. State* (1984), Ind., 470 N.E.2d 1316, 1318.

 Photographs of a crime scene are generally admissible as competent and relevant aids to be used by a jury in understanding the evidence. *Underwood v. State* (1989), Ind., 535 N.E.2d 507, 516; *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206; *reh'g denied*, 493 U.S. 985, 110 S.Ct. 524, 107 L.Ed.2d 524. Videotapes are admitted into evidence under the same standard as applied to photographs. *Harden v. State* (1991), Ind., 576 N.E.2d 590, 595. The videotape in this case shows the crime scene as it first appeared to the investigating officers; the tape made clear the layout of the house and the location of Buck's body in its basement. The videotape also helped the jurors understand the verbal descriptions of the crime scene and enabled them to relate the events of the murder to the locations of their occurrence.

**6.** The same result obtains under the Indiana Rules of Evidence. *See* Evid.R. 805.

■ Admission of cumulative evidence is within the discretion of the trial court and, absent prejudice, is not error. *See Corbin v. State* (1990), Ind., 563 N.E.2d 86, 93 (admission of videotape which was cumulative of photographs held not error). Although some of the same scenes are shown on both the videotape and the photographs, the videotape by its very nature served a purpose which could not be served by the photographs. The videotape was filmed continuously, from when the police approached the murder scene until Buck's body was completely exposed. The continuous nature of the videotape and its panoramic effect showed more of the house's interior than was visible in the photographs. The additional information provided could allow the jury to better visualize the crime scene. As a result, it cannot be said that the prejudicial effect of the videotape outweighed its probative value. The admission of the videotape was not error.

### ISSUE FOUR: MURDER ELEMENTS INSTRUCTION

■ Finally, Davis contends that the trial court erroneously instructed the jury. Although Davis has waived review of this issue through his failure to object to the instructions at trial, *see Patton v. State* (1991), Ind.App., 580 N.E.2d 693, 697, *trans. denied,* this court may consider issues raised for the first time on appeal if necessary to serve the ends of substantial justice or to prevent the denial of fundamental rights. *See Clarkson v. State* (1985), Ind., 486 N.E.2d 501, 506.

■ Without objection by Davis, the trial court gave the following preliminary instruction to the jury:

"THE STATUTORY LAW UPON WHICH THIS CHARGE IS BASED READS, INSOFAR AS APPLICABLE, AS FOLLOWS:

*MURDER*

'A PERSON WHO

(1) KNOWINGLY OR INTENTIONALLY KILLS ANOTHER HUMAN BEING ... COMMITS MURDER, A FELONY.'

THE ELEMENTS OF THE OFFENSE ARE THAT THE DEFENDANT MUST:

1. KNOWINGLY OR INTENTIONALLY

2. KILL

3. ANOTHER HUMAN BEING."

Record at 62. This instruction correctly recites the elements of murder contained in IC 35–42–1–1.

The court's Final Instruction 9 provided:

"A PERSON ENGAGES IN CONDUCT 'INTENTIONALLY' IF, WHEN HE ENGAGES IN THE CONDUCT, IT IS HIS CONSCIOUS OBJECTIVE TO DO SO.

A PERSON ENGAGES IN CONDUCT 'KNOWINGLY' IF, WHEN HE ENGAGES IN THE CONDUCT, HE IS AWARE OF A HIGH PROBABILITY THAT HE IS DOING SO.

YOU ARE INSTRUCTED THAT KNOWLEDGE AND INTENT, WHICH ARE ESSENTIAL ELEMENTS TO BE PROVEN HEREIN, MAY BE INFERRED FROM THE FACTS OR CIRCUMSTANCES AS SHOWN BY THE EVIDENCE."

Record at 489.

■ Davis contends that the two instructions conflict and thus are likely to confuse the jury. The preliminary instruction defines murder as the knowing *or* intentional killing of another human being, but the last sentence of the final instruction informs the jury that, "knowledge *and* intent ... are essential elements to be proven herein...." (emphasis added). The use of the conjunctive "and" in the last sentence of Final Instruction 9 is wrong. To convict Davis of murder, it was necessary for the State to prove either knowledge or intent, not both. IC 35–42–1–1 (1988 Ed.).

■ It is possible that the jury was confused as to whether knowledge and intent were both elements of murder that had to be proved by the State. Even if the jury was confused, that confusion would not require reversal of Davis' conviction. In resolving the inconsistency between the two instructions, the jury could either conclude, incor-

rectly, that the State must prove both knowledge *and* intent, or the jury could conclude, correctly, that the State need prove only knowledge *or* intent. In any event, before they could determine Davis' guilt, the jurors must have agreed upon a finding of knowledge, intent, or both as elements of the crime. If any confusion was created, it worked against the State, not Davis.

Davis has not shown how he was harmed by the inconsistency, and it is his burden to demonstrate not just error, but harm to him that mandates reversal. *See Boyd v. State* (1991), Ind., 564 N.E.2d 519, 523. The error in the instruction did not prejudicially affect any of Davis' rights; therefore, he did not suffer any harm requiring reversal.

Affirmed.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.